# United States Court of Appeals for the Federal Circuit

---

**CURTIS SCOTT,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2014-7095

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 12-1972, Chief Judge Bruce E. Kasold.

---

Decided: June 18, 2015

---

JENNIFER LIBRACH NALL, Baker Botts, LLP, Austin, TX, argued for claimant-appellant. Also represented by CHRISTOPHER GRANAGHAN, DAVID B. WEAVER, JEFFREY S. GRITTON, Vinson & Elkins LLP, Austin, TX.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JOYCE R. BRANDA, ROBERT E.

KIRSCHMAN, JR., CLAUDIA BURKE; Y. KEN LEE, AMANDA R. BLACKMON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before DYK, MAYER, and REYNA, *Circuit Judges.*

DYK, *Circuit Judge.*

Curtis Scott appeals from the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") denying his claim for service connection for hepatitis C. We affirm.

## BACKGROUND

Scott served on active duty for training in the United States Marine Corps Reserve from January to July 1972. On November 18, 1999, Scott tested positive for hepatitis C. He applied for disability benefits on February 4, 2005, alleging that he contracted hepatitis C in service. His primary theory was that he was infected with hepatitis C when he received air-gun inoculations during his military service. The Department of Veterans Affairs ("VA") regional office ("RO") denied Scott's claim for service connection on September 20, 2005.

On April 24, 2006, Scott appealed to the Board of Veterans' Appeals ("Board") and requested an evidentiary hearing before the Board. *See* 38 C.F.R. § 20.700(a) (right to a hearing). Scott was incarcerated at the time of his appeal to the Board. On December 6, 2007, the RO sent a letter to Scott, "acknowledg[ing] [his] request for a Video Conference hearing before the Board," and "request[ing] that [Scott] provide us with the date [Scott is] expected to be released from [his] incarceration so we may schedule [his] video conference hearing accordingly." J.A. 575. Scott responded to the RO on December 13, 2007, reiterating his request for a hearing and informing the Board

that his "minimum expiration parole date for release is January 13, 2017," and his "next parole review date is scheduled for March of 2009." J.A. 573. On January 14, 2008, the RO notified Scott that his hearing had been scheduled for March 14, 2008, in Houston, Texas. Scott, who was still incarcerated on the scheduled hearing date, failed to appear for the hearing.

On March 23, 2008, Scott requested a rescheduled hearing because he "could not appear for [his] hearing because of [his] incarceration." J.A. 826. The Board denied Scott's request, finding that Scott had "not shown good cause for failing to appear for [his] hearing," but made no mention of Scott's incarceration. J.A. 683. The Board subsequently denied Scott's claim for service connection, noting that Scott "failed to report for his scheduled hearing in March 2008" and that the Board denied his request to reschedule it. J.A. 677.

On appeal to the Veterans Court, Scott, who by this time was represented by counsel, did not raise the hearing issue. The Veterans Court vacated and remanded to the Board due to an inadequate medical examination, without mentioning the hearing issue. In remanding to the RO, the Board noted the hearing issue but that Scott "has not renewed his request" for a hearing. J.A. 221. On November 18, 2011, the RO continued the service connection denial without mentioning the hearing issue. Scott again appealed to the Board via a re-certification of appeal form which checked "YES" in answer to "WAS HEARING REQUESTED?", but Scott did not raise the hearing issue with the Board. J.A. 183. The Board affirmed, again noting that Scott "has not renewed his request" for a hearing. J.A. 16.

On appeal to the Veterans Court, on July 26, 2013, Scott raised the hearing issue for the first time since his March 23, 2008, request for a rescheduled hearing. The

Veterans Court affirmed, holding that Scott "did not raise this [hearing] issue in either proceeding," referring to Scott's prior appeal to the Veterans Court and his current appeal before the Board. J.A. 1–2. The Veterans Court held that raising the hearing issue at this late stage "amounts to an effort to engage in undesirable piecemeal litigation, and [Scott] provides no compelling basis to permit it." J.A. 2. Scott appeals. We have jurisdiction pursuant to 38 U.S.C. § 7292(a). We review legal determinations of the Veterans Court de novo. *Moffitt v. McDonald*, 776 F.3d 1359, 1364 (Fed. Cir. 2015).

DISCUSSION

I

The Supreme Court has recognized the importance of issue exhaustion with respect to administrative tribunals. In *United States v. L. A. Trucker Truck Lines, Inc.*, 344 U.S. 33 (1952), the Court held that "orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while [the agency] has opportunity for correction in order to raise issues reviewable by the courts," such that "as a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Id.* at 37.[1] But Scott

---

[1]    *See also Hormel v. Helvering*, 312 U.S. 552, 556 (1941) ("Ordinarily an appellate court does not give consideration to issues not raised below. . . . And the basic reasons which support this general principle applicable to trial courts make it equally desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before

argues that the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000), precludes application of the issue exhaustion doctrine in the context of veterans benefits because proceedings before the VA are non-adversarial in nature.

We addressed this issue even before the Supreme Court's decision in *Sims*, in *Maggitt v. West*, 202 F.3d 1370 (Fed. Cir. 2000). We articulated a case-by-case balancing test for issue exhaustion in the VA system: "The test is whether the interests of the individual weigh heavily against the institutional interests the doctrine exists to serve." *Id.* at 1377 (citing *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)). We remanded to the Veterans Court to determine, *inter alia*, "whether invocation of the exhaustion doctrine [was] appropriate" with respect to the veteran's request to reopen his claim for service connection based on constitutional and statutory arguments that he had not raised before the Board. *Id.* at 1378–79.

Thereafter, in *Sims*, the Supreme Court addressed issue exhaustion in the context of Social Security Administration ("SSA") benefits. The Court noted that "SSA regulations do not require issue exhaustion." 530 U.S. at 108. When that is so, "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Id.* at 109. A plurality of the Court concluded that "[t]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings," such that "a judicially created issue-exhaustion requirement is inappropriate." *Id.* at 110, 112. But the majority also recognized that "it is common for an agency's regulations

---

administrative agencies entrusted with the responsibility of fact finding.").

to require issue exhaustion in administrative appeals. And when regulations do so, courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues." *Id.* at 108 (citations omitted). Justice O'Connor's concurrence also made clear that *Sims* does not apply, and exhaustion is required, where applicable statutes or regulations impose an exhaustion requirement. *See id.* at 113 (O'Connor, J., concurring). Thus, in light of *Sims*, we must determine the extent to which statutes or agency regulations require issue exhaustion in the veterans benefits context.

In previous veterans' cases we have considered issue exhaustion in three specific contexts and have held that the statutes and regulations require issue exhaustion in appropriate circumstances. First, in an appeal from the RO to the Board, 38 C.F.R. § 20.202 specifically requires that the errors by the RO be identified either by stating that all issues in the statements of the case are being appealed or by specifically identifying the issues being appealed.[2] *See Robinson v. Shinseki*, 557 F.3d 1355,

---

[2]   Section 20.202 provides, in relevant part:

If the Statement of the Case and any prior Supplemental Statements of the Case addressed several issues, the Substantive Appeal must either indicate that the appeal is being perfected as to all of those issues or must specifically identify the issues appealed. The Substantive Appeal should set out specific arguments relating to errors of fact or law made by the agency of original jurisdiction in reaching the determination, or determinations, being appealed. To the extent feasible, the argument should be related to specific items in the Statement of the Case and any prior Supple-

1361 (Fed. Cir. 2009) ("We . . . do not suggest that under the regulations the veteran is entirely relieved of his or her obligation to raise issues in the first instance before the VA where the record is being made. The regulations quite clearly impose such an obligation even in direct appeals . . . ." (citing 38 C.F.R. § 20.202)).

Second, where the alleged error was made by the *Board*, we have held that the statute, 38 U.S.C. § 7252(a), requires issue exhaustion before the Board in appropriate circumstances.[3] *See Ledford v. West*, 136 F.3d 776, 779–80 (Fed. Cir. 1998) (Under § 7252, "the [Veterans C]ourt's jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed," and "while the doctrine of exhaustion of administrative remedies is not jurisdictional," exhaustion is normally required.). Thereafter, in *Maggitt*, we held that exhaustion

---

mental Statements of the Case. The Board will construe such arguments in a liberal manner for purposes of determining whether they raise issues on appeal, but the Board may dismiss any appeal which fails to allege specific error of fact or law in the determination, or determinations, being appealed.

38 C.F.R. § 20.202; *see also* 38 U.S.C. § 7105(d)(3) ("The appeal [to the Board] should set out specific allegations of error of fact or law, such allegations related to specific items in the statement of the case. The benefits sought on appeal must be clearly identified.").

[3] Section 7252(a) provides: "The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals. . . . The Court shall have power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate." 38 U.S.C. § 7252(a).

was not required in all cases, distinguished *Ledford*, and concluded that "[n]othing in the statutory scheme providing benefits for veterans mandates a jurisdictional requirement of exhaustion of remedies which would require the Veterans Court to disregard every legal argument not previously made before the Board." *See* 202 F.3d at 1376–77. As noted above, "the test is whether the interests of the individual weigh heavily against the institutional interests the doctrine exists to serve." *Id.* at 1377 (citing *McCarthy*, 503 U.S. at 146).

In *Bernklau v. Principi*, 291 F.3d 795 (Fed. Cir. 2002), decided after *Sims*, we upheld the Veterans Court's application of issue exhaustion to arguments that the veteran had failed to raise before the Board, holding that *Maggitt* did not require an explicit balancing of interests in the individual case. *See id.* at 799, 801–02. We held that new arguments for an earlier effective date based on past events allegedly supporting an informal claim for individual unemployability "TDIU" were properly rejected as not raised before the Board. *See id.* at 800–02.[4]

---

[4]    Scott relies on cases from other circuits which held that issue exhaustion did not apply to various agency proceedings. But none of these cases involved a statute or regulation that specifically imposed an issue exhaustion requirement. *See Alaska Survival v. Surface Transp. Bd.*, 705 F.3d 1073, 1081 (9th Cir. 2013) (declining to apply issue exhaustion to an appeal from the Surface Transportation Board because the "administrative process lacks an adversarial component" with no mention of a statute or regulation requiring otherwise); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 630 (9th Cir. 2008) ("No ERISA statute precludes courts from hearing objections not previously raised . . . nor does any ERISA statute or regulation require claimants to identify all

Third, in an appeal from the Veterans Court to this court we have held that 38 U.S.C. § 7292(a) requires issue exhaustion at the Veterans Court level.[5] In *Belcher v. West*, 214 F.3d 1335 (Fed. Cir. 2000), we explained that "38 U.S.C. § 7292(a) speaks directly to the requirement of issue exhaustion." *Id.* at 1337 (citing *Sims*, 530 U.S. at 106–09). In *Belcher*, the veteran raised an argument for the first time on appeal to this court that the Veterans Court failed to follow a VA regulation relating to service connection. *Id.* at 1336. We declined to consider the argument, holding that we lacked jurisdiction to hear it because it was not addressed by or presented to the Veterans Court. *Id.* at 1337.

The statutes and regulations thus impose a requirement of issue exhaustion in appropriate circumstances. While the requirement of exhaustion is relatively strict in

---

issues they wish to have considered on appeal."); *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 463 (6th Cir. 2004) ("In considering whether the district court properly imposed an issue exhaustion requirement in the case *sub judice*, we initially observe that such a requirement exists in neither [the agency's] organic statute nor its regulations.").

[5] Section 7292(a) provides, in relevant part:

After a decision of the [Veterans Court] is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision.

38 U.S.C. § 7292(a).

proceedings before the Veterans Court, we have concluded that the non-adversarial nature of proceedings before the VA mandates a less strict requirement, as we now discuss.

## II

In view of the non-adversarial nature of proceedings before the Board, it is appropriate in the first and second situations listed above that the Board and the Veterans Court give a liberal construction to arguments made by the veteran before the Board, as is specifically required by § 20.202 of the regulations in the case of appeals from the RO to the Board. "In various decisions we have made clear that the Board has a special obligation to read pro se filings liberally." *Robinson*, 557 F.3d at 1358–59. In *Robinson*, we held that this obligation extends to cases in which the veteran is represented by counsel. *See* 557 F.3d at 1359–60. This obligation extends to all proceedings before the Board. It follows from the test articulated in *Maggitt*. *See* 202 F.3d at 1377.

Our prior cases have illuminated what is required by a liberal construction. In *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001), the Veterans Court affirmed the Board's service-connection denial because the veteran had failed to allege TDIU. *Id.* at 1382. We held, in the context of clear and unmistakable error ("CUE") claims, that the VA must "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." *Id.* at 1384 (quoting *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998)). Thus, "[o]nce a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability, the 'identify the benefit sought' requirement of 38 C.F.R. § 3.155(a) is met and the VA must consider TDIU." *Id.*

In *Comer v. Peake*, 552 F.3d 1362 (Fed. Cir. 2009), we held that where the veteran made a claim for service connection and record evidence supported total disability based on TDIU benefits, the Board was required to consider that evidence as a TDIU claim even though the veteran had not specifically raised a TDIU claim. *See id.* at 1366–69. *Comer* held that the requirement to liberally construe a veteran's arguments extended to arguments that were "not explicitly raised" before the Board. *Id.* at 1366.

Similarly, in *Robinson*, we held that where the veteran made a claim for service connection and record evidence supported secondary service connection, the Board was required to consider that evidence as a claim for secondary service connection even though the veteran had not specifically raised secondary service connection. *See Robinson*, 557 F.3d at 1361–62; *see also Rivera v. Shinseki*, 654 F.3d 1377, 1382 (Fed. Cir. 2011) ("In light of the Board's obligations to read veterans' submissions liberally and to consider the full context within which those submissions are made, we conclude that section 7105(d)(3) does not impose such a[n explicit statement] requirement, at least in the context of a case involving the single factual question of the sufficiency of the veteran's evidence to reopen a claim.").

*Roberson*, *Robinson*, and *Comer* thus require the Veterans Court to look at all of the evidence in the record to determine whether it supports related claims for service-connected disability even though the specific claim was not raised by the veteran. They also require that veterans' procedural arguments be construed liberally, but those cases do not go so far as to require the Veterans Court to consider procedural objections that were not raised, even under a liberal construction of the pleadings.

There is a significant difference between considering closely-related theories and evidence that could support a veteran's claim for disability benefits and considering procedural issues that are collateral to the merits. As to the former, the veteran's interest is always served by examining the record for evidence that would support closely related claims that were not specifically raised. As to procedural issues, that is not always the case. A veteran's interest may be better served by prompt resolution of his claims rather than by further remands to cure procedural errors that, at the end of the day, may be irrelevant to final resolution and may indeed merely delay resolution. Under such circumstances, the failure to raise an issue may as easily reflect a deliberate decision to forgo the issue as an oversight. Having initially failed to raise the procedural issue, the veteran should not be able to resurrect it months or even years later when, based on new circumstances, the veteran decides that raising the issue is now advantageous. For this reason, absent extraordinary circumstances not apparent here, we think it is appropriate for the Board and the Veterans Court to address only those procedural arguments specifically raised by the veteran, though at the same time giving the veteran's pleadings a liberal construction.

In short, we hold that the Board's obligation to read filings in a liberal manner does not require the Board or the Veterans Court to search the record and address procedural arguments when the veteran fails to raise them before the Board. Under the balancing test articulated in *Maggitt*, the VA's institutional interests in addressing the hearing issue early in the case outweigh Scott's interests in the Veterans Court's adjudication of the issue.

A review of Scott's pleadings to the Board confirms that Scott did not raise the hearing issue in his current appeal to the Board. The regulations do not require that

the Board or the Veterans Court address the veteran's argument that the Board erred in not providing him with a hearing.

### AFFIRMED

### COSTS

No costs.