Citation Nr: 1719242 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 15-08 298 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to an effective date prior to May 23, 2008 for the assignment of a 100 percent disability rating for loss of use of both hands. 

2. Entitlement to an effective date prior to May 23, 2008 for the grant of special monthly compensation (SMC) at the level of R-1 based on the need for aid and attendance.


REPRESENTATION

Appellant represented by: Paralyzed Veterans of America, Inc.


ATTORNEY FOR THE BOARD

April Maddox


INTRODUCTION

The Veteran served on active duty in the Army from April 1966 to October 1972. 

These matters come to the Board of Veterans' Appeals (Board) from October 2012 and January 2013 decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. In particular, the October 2012 rating decision, in part, granted SMC at the level of R-1 based on the need for aid and attendance effective December 15, 2011 and the January 2013 rating decision continued the effective date originally assigned.

In an August 2016 decision, the Board granted an effective date of May 23, 2008 for the award of SMC at the level of R-1 based on the need for aid and attendance . Thereafter, the Veteran appealed the portion of the decision that denied an effective date earlier than May 23, 2008 to the United States Court of Appeals for Veterans Claims (Court). By an order dated in February 2017, the Court remanded the case in response to a joint motion for remand (JMR), which the Court incorporated by reference.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900 (c) (2015). 38 U.S.C.A. § 7107 (a)(2) (West 2014).


FINDINGS OF FACT

1. On December 16, 2003, the RO received the Veteran's formal claim of service connection for residuals of a cervical spine surgery to include paralysis. Service connection was established as of June 9, 2003.

2. Prior to May 23, 2008, the Veteran had diminished function in both hands; notably, the earliest ascertainable date that it is as likely as not that he would have been equally well served by amputation and the use of suitable prosthetic appliances is October 31, 2003, when the evidence shows that the Veteran was unable to attend to activities of daily living.


CONCLUSIONS OF LAW

1. Resolving reasonable doubt in favor of the Veteran, the criteria for the grant of a 100 percent disability rating for loss of use of both hands have been met from October 31, 2003, but no sooner. 38 U.S.C.A. §§ 1114 (k), 1155, 5107, 5110 (West 2014); 38 C.F.R. §§ 3.102, 3.350(a)(2), 3.400, 4.63 (2016). 

2. Resolving reasonable doubt in favor of the Veteran, the criteria the grant of special monthly compensation (SMC) at the level of R-1 based on the need for aid and attendance have been met from October 31, 2003, but no sooner. 38 U.S.C.A. §§ 1114 (r)(1), 1155, 5107, 5110 (West 2014); 38 C.F.R. §§ 3.102 , 3.350, 3.400, 4.63 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

With respect to the Veteran's claims herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

In general, the effective date of an award of compensation and rating based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C.A. § 5110 (a) (West 2014); 38 C.F.R. § 3.400 (2014). When evidence demonstrates that a factually ascertainable increase in disability occurred within the one-year period preceding the date of receipt of a claim for increased compensation, the effective date of the award shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from that date. 38 U.S.C.A. § 5110 (b)(2); 38 C.F.R. § 3.400 (o)(2); Harper v. Brown, 10 Vet. App. 125 (1997). 

A "claim" is defined broadly to include a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1 (p) (2016). Any communication indicating an intent to apply for a benefit under the laws administered by the VA may be considered an informal claim provided it identifies, but not necessarily with specificity, the benefit sought. See 38 C.F.R. § 3.155 (a) (2016). 

In certain circumstances, the date of receipt of evidence from a private physician or a lay person will be accepted when the evidence furnished by or on behalf of the claimant is within the competence of the physician or lay person and shows a reasonable possibility of entitlement to benefits. 38 C.F.R. § 3.157 (b)(2) (2016). Also, in certain circumstances, the date of VA outpatient or hospital examination, or the date of admission to a VA or uniformed services hospital, will be accepted as the date of receipt of a claim when the report of such treatment or examination relates to a disability for which increased compensation is sought. 38 C.F.R. § 3.157 (b)(1) (2016). 

As was noted in the August 2016 Board decision, given that the Veteran asserts that his entitlement to earlier effective dates arises from his June 9, 2003 VA cervical spine surgery, the Board has afforded him the benefit of the doubt and construed that as the date of his informal claim for service connection for loss of use of both hands and his related claim regarding SMC. Id. 

A service-connected disability results in loss or loss of use, for SMC purposes, where an extremity, or a portion thereof, a creative organ, breast, or both buttocks, is/are either anatomically absent or there remains no effective function of the affected body part. 38 U.S.C.A. § 1114 (k). Specifically, SMC will be awarded for the anatomical loss of a hand, or where there is "loss of use" of the hand. 38 U.S.C.A. § 1114 (k); 38 C.F.R. §§ 3.350 (a)(2); 4.63. "Loss of use of the hand" means that no effective function remains other than that which would be equally well-served by an amputation stump below the elbow with use of a suitable prosthetic appliance. Id.; Tucker v. West, 11 Vet. App. 369, 373 (1998). "Effective function" may include the ability to pick up coins from a table, grasp tools or eating utensils, and fasten clothes. 38 C.F.R. § 3.350 (a)(2). Whether there is loss of use is a question for the Board; the Board may not ask a clinician to determine whether there is "loss of use." VBA Manual M21-1, IV.ii.2.H.1.b. However, an examiner may be asked to provide the following: a detailed objective description of remaining function, a quantitative assessment of strength, or a description of any pain that affects use. Id. Loss of use of the hand will automatically be held to exist where there is complete ankylosis of two major joints in the upper extremity. 38 C.F.R. §§ 3.350 (a)(2)(i)(a); 4.63(a). 

SMC may also be awarded when, as a result of a service-connected disability, the veteran is so helpless (due to physical or mental incapacity), that he or she requires the regular aid and attendance of another individual to perform the personal functions required in everyday living. 38 U.S.C.A. § 1114 (l); 38 C.F.R. §§ 3.350 (b), 3.351(b), 3.352(a). SMC for aid and attendance may be granted on a schedular or extraschedular basis. 38 U.S.C.A. § 1114 (l); 38 C.F.R. § 3.321 (b)(1). If the service-connected disability which renders the veteran so helpless as to require the aid of another person is rated as 100 percent disabling, the award of SMC(l) will be on a schedular basis. 

A veteran qualifies for a higher level of aid and attendance under 38 U.S.C.A. § 1114 (r)(1) if the Veteran is in receipt of an SMC(p) rating, see 38 C.F.R. § 3.350 (h)(1), and if the veteran also meets the criteria for regular aid and attendance under 38 C.F.R. § 3.352 (a). 

As was noted in the February 2017 JMR, the relevant regulations do not require that a claimant's condition result in quadriplegia in order to meet the criteria for service connection for loss of use of the hands or for SMC based on the need for aid and attendance. See 38 C.F.R. § 3.352 (a)(2) (stating that the determination as to whether loss of a hand will be held to exist "will be made on the basis of the actual remaining function, whether the acts of grasping, manipulation, etc.... could be accomplished equally well by an amputation stump with prosthesis"); 38 C.F.R. § 3.352 (a) (stating that inability to dress, keep oneself clean, feed self, and attend to the wants of nature "will be accorded consideration in determining the need for regular aid and attendance"). 

In this case, the Veteran is in receipt of an SMC (p) rating for his service-connected posttraumatic stress disorder (PTSD) with additional service-connected disabilities, including coronary artery disease, hypertension, and claudication of the bilateral lower extremities; the Veteran also currently meets the criteria for regular aid and attendance under 38 C.F.R. § 3.352 (a) on account of entitlement under subsection (o) and being in need of regular aid and attendance from May 23, 2008. As he meets both criteria, the Veteran has been granted SMC for aid and attendance under 38 U.S.C.A. § 1114 (r)(1) from May 23, 2008. 

The Veteran is currently in receipt of service connection for loss of use of both hands, rated as 100 percent disabling, from May 23, 2008 based upon the date of a private treatment which shows that his condition resulted in quadriplegia. 

The Veteran asserts that he has had loss of use of the hands immediately following his June 9, 2003 cervical spine surgery; therefore, he asserts entitlement to earlier effective dates for the grant of service connection for the loss of use of his hands and the related award of SMC from that date. The Board has thoroughly reviewed the evidence of record to determine whether it is factually ascertainable that the Veteran experienced loss of use of the hands prior to the current effective date of May 23, 2008. 

A postoperative VA treatment note from June 2003 documents that the Veteran had intact sensation in all extremities. Subsequent treatment notes in June 2003 likewise document the Veteran's reports that his symptoms of pain and numbness in his hands and arms had improved and resolved. In July 2003, the Veteran denied having paresthesia in his hands. 

However, as early as August 2003, the Veteran reported that he was having numbness in his right thumb and index finger. In October 2003, the Veteran reported gradual loss of function in his bilateral upper extremities. An October 16, 2003 VA treatment record shows that he was gradually losing more function of his bilateral upper extremities and could hardly lift his arms or hold utensils.

A second cervical surgery was performed on October 18, 2003. Significantly, an October 22, 2003 VA treatment record shows that, immediately following the second surgery, he was able to feed himself again, was able to dress himself again, was able to walk, and had resolution of numbness. However, just three days after the surgery, the Veteran began experiencing numbness again. Private treatment records also show that the Veteran had resolution of symptoms for approximately three days following the October 18, 2003 surgery but then his symptoms returned. 

Significantly, an October 31, 2003 VA treatment record shows that the Veteran had numbness in both arms, severe pain, and could not even brush his own teeth. A November 4, 2003 VA treatment record shows that the Veteran was losing abilities in both arms and could no longer feed himself but that he was able to toilet alone. Subsequently, in February 2004 correspondence, the Veteran's wife reported that the Veteran could no longer wash his own body, brush his teeth, clean himself after toileting, button his shirt, or do tasks that require him to feel what is in his hand. Furthermore, private treatment records as early as January 2004 document that the weakness in his hands rendered him essentially inactive and helpless requiring continued assistance in his tasks of daily living. A March 2006 psychology treatment record shows that the Veteran did not feed himself at all and was completely unable to dress himself. A May 2006 psychosocial screening states that the Veteran needs considerable assistance with activities of daily living, including bathing, dressing, and transfers. A June 2006 treatment record rated the Veteran at "1," which equates to "total assistance," for multiple activities of daily living, including grooming, bathing, and dressing. 

As early as May 2008, private treatment records reflect physical examinations and assessments of the Veteran's condition as quadriplegia status post neck surgery. 

A March 2015 letter from his private treating physician states that the Veteran has been 100 percent impaired as a result of his first cervical spine surgery on June 9, 2003. The physician noted that the Veteran could barely move his head and only minimally move his neck, which resulted in him being completely helpless and dependent upon complete care for 24 hours a day. 

An April 2015 letter from the Veteran's wife states that from the date of his first cervical spine surgery on June 9, 2003, the loss of use of the Veteran's hands was apparent and severe. 

Based on the above, the Board finds that the evidence of record reveals that an informal claim for SMC based on loss of use of the hands was constructively received on June 9, 2003, and the earliest factually ascertainable date that the Veteran was entitled to service connection for loss of use of the hands, and a related award of SMC at the level of R-1 based on the need for aid and attendance due to the loss of use of the hands is October 31, 2003, when a VA treatment record shows that the Veteran was losing abilities in both arms and could no longer brush his teeth. 

While the Veteran began experiencing numbness in his upper extremities as early as August 2003, there is no indication that this numbness precluded him from performing his activities of daily living at that time. Also, while it has been determined that the Veteran's October 18, 2003 surgery resulted in additional disability to his cervical spine, on October 22, 2003, the Veteran reported that he was able to feed and dress himself. The earliest indication that the Veteran was unable to perform regular activities of daily living, such as brushing his teeth, is the October 31, 2003 VA treatment record. 

Thus, resolving reasonable doubt in favor of the Veteran, the criteria for an effective date of October 31, 2003 for the grant of a 100 percent disability rating for loss of use of both hands and SMC at the level of R-1 based on the need for aid and attendance due to loss of use of both hands have been met, and to that extent, the claims are granted. See 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3; Gilbert, 1 Vet. App. 49.


ORDER

An effective date of October 31, 2003, but no sooner, for the grant of a 100 percent disability rating for loss of use of both hands, is granted. 

An effective date of October 31, 2003, but no sooner, for the grant of special monthly compensation (SMC) at the level of R-1 based on the need for aid and attendance, is granted.



____________________________________________
R. FEINBERG
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs