﻿Citation Nr: 19172633
Decision Date: 09/18/19 Archive Date: 09/18/19

DOCKET NO. 10-15 678
DATE: September 18, 2019

ORDER

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is denied.

FINDING OF FACT

The evidence does not demonstrate that the Veteran’s service-connected disabilities precludes him from securing and following any substantially gainful employment. 

CONCLUSION OF LAW

The criteria for entitlement to a TDIU have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.340, 3.341, 4.16.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from November 1975 to November 1979.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a July 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. The Board remanded this issue in December 2015 and September 2016 for further development and most recently in September 2018.

The Veteran was scheduled to testify at a hearing before the Board on October 2015. An August 2015 letter notified the Veteran of the date, time, and location of the hearing. However, he did not appear for this hearing and has not provided a reason for his failure to appear or requested that the hearing be rescheduled. Accordingly, the Board will proceed with appellate review. See 38 C.F.R. § 20.704(d) (2017) (providing that failure to appear for a scheduled hearing will be processed as though the request for a hearing had been withdrawn).

Pursuant to the Veterans Claims Assistance Act (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 (2017).

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board... to search the record and address procedural arguments when the veteran fails to raise them before the Board.”); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

1. Entitlement to a TDIU

The Veteran is seeking a TDIU based on his service-connected disabilities.

Total disability means that there is present any impairment of mind or body sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. §§ 3.340, 4.15. A substantially gainful occupation has been defined as “an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the Veteran actually works and without regard to the Veteran’s earned annual income.” Faust v. West, 13 Vet. App. 342 (2000). Marginal employment shall not be considered substantially gainful employment. Substantially gainful employment is defined as work that is more than marginal, which permits the individual to earn a “living wage.” Id. Marginal employment is defined as an amount of earned annual income that does not exceed the poverty threshold determined by the Census Bureau. 38 C.F.R. § 4.16(a). 

When jobs are not realistically within his physical and mental capabilities, a veteran is determined unable to engage in a substantially gainful occupation. Moore v. Derwinski, 1 Vet. App. 356 (1991). In making this determination, consideration may be given to factors such as the veteran’s level of education, special training, and previous work experience, but not to age or impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993).

Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities provided that if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. For the purpose of one 60 percent or one 40 percent disability in combination, disabilities resulting from a common etiology or a single accident will be considered as one disability. 38 C.F.R. § 4.16(a).

The Board notes that the ultimate question of whether a Veteran is capable of substantially gainful employment is not a medical one; that determination is for the adjudicator. Geib v. Shinseki, 773 F.3d 1350, 1354 (Fed. Cir. 2013). Thus, the VA examiners’ conclusions are not dispositive. However, the observations of the examiners regarding functional impairment due to the service-connected disability go to the question of physical or mental limitations that may impact his ability to obtain and maintain employment.

As an initial matter, the Board finds that the claim for a TDIU was raised by the record in an April 2010 substantive appeal, in which the Veteran contended that he was unable to work due to his service-connected disabilities. The Board found that it had jurisdiction over the issue for a TDIU, because it was part and parcel of the increased rating claim on appeal that was initiated on October 16, 2008. Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). Therefore, the relevant appeal period for the Veteran’s TDIU claim is from October 16, 2008.

From October 16, 2008 to September 13, 2017, the Veteran was service connected for osteoarthritis of the lumbar spine at 20 percent disabling, numbness and weakness of the right lower extremity at 20 percent disabling, numbness and weakness of the left lower extremity at 20 percent disabling, bilateral hearing loss at 10 percent disabling, and tinnitus at 10 percent disabling. These disabilities result in a combined rating of 60 percent. Given the foregoing, the Board finds that the Veteran does not meet the minimum percentage requirements under 38 C.F.R. § 4.16 (a) for entitlement to a schedular TDIU. 

From September 14, 2017, the Veteran was service connected for osteoarthritis of the lumbar spine at 40 percent disabling, numbness and weakness of the right lower extremity at 20 percent disabling, numbness and weakness of the left lower extremity at 20 percent disabling, bilateral hearing loss at 10 percent disabling, and tinnitus at 10 percent disabling. These disabilities result in a combined rating of 70 percent. Given the foregoing, the Board finds that the Veteran does meet the minimum percentage requirements under 38 C.F.R. § 4.16 (a) for entitlement to a schedular TDIU.

Although, from October 16, 2008 to September 13, 2017, the Veteran does not meet the schedular criteria for a TDIU, it is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16 (b). Rating boards should refer to the Director of the Compensation and Pension Service for extraschedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities but who fail to meet the percentage requirements set forth in 38 C.F.R. § 4.16 (a). The veteran’s service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. 38 C.F.R. § 4.16 (b).

A careful review of the record reveals that the Veteran has worked as a tutor, shoe salesman, jewelry specialist, salesman and manager at Radio Shack, lumber salesman, and inventory specialist from 1984 to May 1997. The job he performed the longest was at Radio Shack. He reported that as a manager, he ordered inventory, worked as a human relations director, did bookkeeping, kept up to date on new materials for advancements of new products, trained employees, and compared billed products to those received. He last worked as an inventory specialist, in which he did the inventories of department stores and other large businesses. The Veteran completed high school and two years of college in business administration. 

On multiple occasions, the Veteran reported that he had stopped working after falling from a ladder at Radio Shack and injured his back. 

According to VA treatment records from October 2008 to July 2018, the Veteran consistently reported severe back pain radiating down to his legs, low back stiffness, and pain in his lower extremities. He required a cane to ambulate, had an unsteady gait, and used a back brace. He reported being unable to walk long distances and to sit or stand without discomfort. The Veteran also stated that his back gave out at times and he was unable to get up without assistance. It was noted that the Veteran had balance issues due to pain in his lower back and bilateral lower extremities. It was also noted that the Veteran wore hearing aids. 

In an April 2004 VA treatment record, it was noted that the Veteran was disabled secondary to his hearing loss, heart condition, back condition, tobacco use, alcohol use, and drug use (i.e., cocaine and marijuana). 

The VA treatment records indicated that the Veteran also had diabetes, diabetic neuropathy, hypertension, chest pain related to anxiety, depression and suicidal thoughts, chronic pain in his wrists, chest muscle spasms, skin lesions, coronary artery disease, aortic insufficiency, chronic obstructive pulmonary disease (COPD), and Alzheimer’s. While it was indicated that the Veteran’s skin lesions, depression, and anxiety were due to his back pain, these disabilities are not service connected and cannot be considered in adjudicating the Veteran’s TDIU claim. 

In a December 2008 lay statement, the Veteran reported daily pain and being a little slower than others. Activities, such as going to the bathroom, getting up from bed, or getting up from a chair, were harder to do. He was unable to play sports, dance, or work in the yard. 

According to August 2008 private treatment records, the Veteran had weakness in his left lower extremity, balance problems, and decreased ability to stand and walk. 

According to January 2010 VA examinations, the Veteran had chronic low back pain with some numbness to his legs that was treated with pain pills with no side effects. The examiner found that there were no significant effects on the Veteran’s usual occupation due to his back disability, but did find that it prevented chores, exercise, sports, and recreation, had severe effects on toileting, and had moderate effects on shopping, traveling, bathing, and dressing. The Veteran had chronic, gradual leg numbness and weakness, an abnormal gait, and abnormal balance. He used a cane. The examiner found that the Veteran’s radiculopathy had no effect on his usually daily activities. Additionally, the Veteran wore hearing aids. 

In the April 2010 substantive appeal, the Veteran stated that both of his legs were numb and weak and that the worst pain was in his lumbar spine. It was difficult getting started and watching for a wrong step. He was advised not to do jobs around the house, like yardwork. He stated that he would not stay sitting or standing without his spine giving him trouble. He reported that he was upset about not being able to work. 

In a November 2012 VA examination for Housebound Status or Permanent Need for Regular Aid and Attendance, the examiner noted that the Veteran had a long history of chronic back pain and needed assistance from a health aide to complete grooming skills. She also noted that the Veteran had difficulty with motor skills due to his COPD, that his spine was restricted due to his back problems, and that his trunk was restricted due to obesity. 

According to April 2015 VA examinations, the Veteran had chronic low back pain and numb legs that gave out, moderate radiculopathy, and muscle spasms that resulted in an abnormal gait. He had flare ups three to four times a month in which his legs went numb and he fell. He occasionally used a wheel chair and constantly used a cane. The examiner found that the Veteran’s back condition impacted his ability to work. The functional impairment of the Veteran’s back condition was that he could lift five pounds for two minutes, could walk one block at a time, could walk for 30 minutes in an eight-hour day, could stand for 20 minutes at a time, and could sit or stand for 30 minutes in an eight-hour day. The functional impact of his hearing loss was that he had to ask people to repeat themselves to understand them. The functional impact of his tinnitus was that it interfered with his sleeping and hearing. 

According to January 2016 VA examinations, the Veteran reported flare ups of his back disability which involved increased back pain and reduced ability to perform bending activities. He also stated that the pain prevented him from lifting his legs and made him unable to continue “to do already limited walking.” Localized tenderness to the Veteran’s back resulted in abnormal gait or spinal contour. He constantly used a cane. The examiner found that the functional impact of the Veteran’s back disability was limited walking due to his cane, limitations for low and moderate bending activities, and limitations of lifting light weights repeatedly. The examiner found that the Veteran had severe constant pain, severe intermittent pain, severe numbness, and moderate paresthesias and/or dysthesias in his bilateral lower extremities. He had an abnormal gait due to muscle spasms and foot pain, which was due to his neuropathy. The examiner found that the functional impact of the Veteran’s bilateral lower extremities radiculopathy was progressive pain, difficulty standing, difficult walking, and difficulty with balance. The Veteran would also have difficulty with carrying or lifting heavy objects singularly or moderate weights repeatedly. The examiner also found that the functional impairment of the Veteran’s hearing loss was difficulty hearing and understanding conversation, and often asking others to repeat themselves. His tinnitus interfered with his ability to hear speech clearly. 

The examiner opined that that the Veteran could work using assistive devices and with accommodations. He noted that the Veteran reported increased loss of energy and fatigability due to his diabetes and reduced capacity for ambulation as he relied on a cane due to his neuropathy and back condition. He also reported that his current prescribed restriction included no lifting greater than 50 pounds. He was unable to run, carry, or climb as he required a cane and had balance issues. It was noted that the Veteran was able to do light work lifting up to ten pounds. He had no restrictions to repetitive lifting up to ten pounds or repetitive carrying up to ten pounds while stationary. However, his push/pull, bending/twisting, kneeling, and squatting were limited due to his cane and back pain which limited his range of motion when symptomatic. He could drive up to about 40 miles but would need breaks for distances greater than that due to needing to change positions frequently. There were no restrictions for keyboarding or tasks that require grasping/gripping so long as he could remain stationary when doing so

The examiner also opined that the Veteran’s hearing impairment did not prevent him from performing arduous/unlimited work, unlimited sedentary work tasks, or activities of daily living required to secure and/or maintain employment as long as he had the assistance of proper amplification. He noted that the Veteran’s hearing impairment would make it difficult to understand speech at normal conversational levels in quiet environments and especially in the presence of background noise. Tinnitus would also affect his ability to hear speech clearly. The examiner found that understanding speech on the telephone will also present a problem for the Veteran. However, with proper amplification, the Veteran would have better access to speech spectrum. 

According to the September 2017 VA examinations, the Veteran had chronic back pain treated with medications. He had muscle spasms resulting in abnormal gait or abnormal spinal contour. The Veteran also had mild constant pain, mild intermittent pain, mild numbness, and moderate paresthesias and/or dysthesias in his bilateral lower extremities. He required constant use of his cane. The examiner found that the functional impact of the Veteran’s back disability on his ability to work was loss of up to one week of work time in the last twelve months, inability to stand for long periods of time, severe back pain, inability to bend at waist, and use of cane to ambulate. 

Based on the foregoing evidence of record, the Board finds that the preponderance of the evidence does not show that the Veteran’s service-connected disabilities rendered him unable to secure and follow a substantially gainful occupation as of October 18, 2008. 

In making this determination, the Board acknowledges that the Veteran’s service-connected disabilities certainly cause him some level of functional impairment, particularly his lumbar spine disability. In fact, the VA examinations of record indicate that the Veteran’s ability to bend, stand, carry, lift, and climb are affected by his disabilities of the lumbar spine and bilateral lower extremities. However, these VA examinations also indicate that the Veteran is not precluded from all forms of work due to his service-connected disabilities, particularly in light of his educational and work history. For example, the January 2016 VA examiner found that the Veteran’s lumbar spine and bilateral lower extremity disabilities did not restrict keyboarding or tasks that require grasping/gripping so long as the Veteran could remain stationary when doing so. Furthermore, while it was found that Veteran’s bilateral hearing loss and tinnitus interfered with his ability to hear and understand speech, the January 2016 VA examiner found that while the Veteran used amplification devices, it did not impact his ability to secure and/or maintain employment. VA treatment records show that the Veteran has been using hearing aids throughout the appeal period. 

In sum, the medical evidence of record does not suggest that the Veteran is unemployable due to his service-connected disabilities from October 16, 2008. Further, the evidence of record does not suggest that his service-connected disabilities cause such an exceptional or unusual disability picture so as to place him in a different category than other veterans with an equal rating of disability prior to September 14, 2017. As such, there is no basis for referring the Veteran’s claim to the Director of Compensation Service for consideration of entitlement to a TDIU on an extraschedular basis under the provisions of 38 C.F.R. § 4.16(b).

In making this finding, the Board emphasizes that the rating schedule is intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. To the extent that service-connected disabilities affect the Veteran’s employment, the assigned schedular ratings for his disabilities compensate the Veteran for such impairment. 

(Continued on the next page)

 

Accordingly, the Board finds that the preponderance of the evidence is against finding that the Veteran’s service-connected disabilities prevent him from securing or following a substantially gainful employment. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable, and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 49.

 

 

LESLEY A. REIN

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. Ko, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.