NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**LESTER A. CERANA,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

_____

2021-1397

_____

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-1475, Chief Judge Margaret C. Bartley, Judge Joseph L. Falvey, Jr., Judge Michael P. Allen.

_____

Decided:  November 18, 2021

_____

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

ROBERT R. KIEPURA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., ELIZABETH MARIE HOSFORD; Y. KEN LEE, DEREK SCADDEN,

Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before LOURIE, O'MALLEY, and STOLL, *Circuit Judges.*

STOLL*, Circuit Judge.*

Lester Cerana appeals the decision of the United States Court of Appeals for Veterans Claims affirming the Board of Veterans' Appeals denial of compensation for left toe amputation. Because Mr. Cerana's challenges on appeal involve the application of law to fact, we dismiss for lack of jurisdiction.

BACKGROUND

I

Mr. Cerana served in the United States Army from 1982 to 1988. On February 23, 2014, he was treated at the Cleveland Veterans Affairs Medical Center for a left foot infection. Mr. Cerana was admitted for "worsening left foot cellulitis, now with evidence of necrotic tissue and possible tendon involvement." J.A. 33. The medical team determined that surgery was necessary to treat the infected area by removing damaged tissue, and a podiatry resident obtained Mr. Cerana's informed consent to perform the procedure. J.A. 34–40. The written informed consent was for "SOFT-TISSUE – INCISION AND DRAINAGE" and "DEBRIDEMENT" of the left foot. J.A. 34. The procedure involved "drainage of blood or other fluid from the affected area" and "[s]urgical removal of dead or infected tissue from feet and toes." J.A. 35. One of the associated risks with the foot debridement was "[u]nexpected change in procedure at time of surgery." J.A. 36. An addendum to the informed consent stated that the podiatry resident "discussed with [Mr. Cerana] that he may need further bone debridement which he understands and agrees with." J.A. 42–43. A pre-operative report from the attending

podiatry surgeon noted that the podiatry resident had obtained Mr. Cerana's informed consent.  Mr. Cerana's left foot was debrided during the surgery, but the podiatry surgeon detailed that "[t]he tissue within the incision was noted to be non-viable gray in color" and that the "[d]ecision was made to proceed with the amputation of the 5th toe and partial 5th metatarsal."  J.A. 62.

In April 2014, Mr. Cerana filed a claim with the Department of Veterans Affairs (VA) for compensation under 38 U.S.C. § 1151 for the allegedly unnecessary amputation of his left toe.  Section 1151(a)(1)(A) states in relevant part:

> (a) Compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded for a qualifying additional disability or a qualifying death of a veteran in the same manner as if such additional disability or death were service-connected. For purposes of this section, a disability or death is a qualifying additional disability or qualifying death if the disability or death was not the result of the veteran's willful misconduct and—
>
> > (1) the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility as defined in section 1701(3)(A) of this title, and the *proximate cause* of the disability or death was—
> >
> > > (A) carelessness, negligence, lack of proper skill, *error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination.*

*Id.* (emphases added to relevant portions).

In July 2015 Mr. Cerana submitted a statement to the VA Regional Office claiming that the podiatry resident "inform[ed] [him] that they would need to remove [his] toe and possibly [his] entire foot." J.A. 71. Mr. Cerana stated that he granted the resident "permission to remove [his] toe if needed but she was not to remove [his] entire foot without more testing being done." *Id.* (emphasis omitted). The VA provided a March 2015 medical opinion explaining that "the decision to amputate the toe was appropriate" based on another VA physician's review of the case. J.A. 72–73. The VA Regional Office denied the claim for compensation for left toe amputation in March 2015 because "the evidence fail[ed] to show that [Mr. Cerana's] VA medical . . . services were the cause of additional disability." J.A. 80. In August 2015, Mr. Cerana filed a notice of disagreement. In September 2015, Mr. Cerana secured his own medical opinion from an orthopedist who explained that he "would have attempted to save the bone so that the patient could walk with a more normal gait," but the opinion did not state that the VA's ultimate medical decisions were inappropriate. J.A. 74–78. The VA denied his claim again in July 2017. Mr. Cerana then appealed to the Board of Veterans' Appeals in August 2017.

II

On November 21, 2018, the Board denied Mr. Cerana's claim for compensation under § 1151 for his left toe amputation. The Board first addressed Mr. Cerana's allegation that the amputation was unnecessary and explained that, under § 1151, disability compensation may be awarded if the VA's treatment results in additional disability proximately caused by the VA's "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault." The Board found that "the evidence weigh[ed] against finding that [Mr. Cerana's] left toe amputations were proximately caused or aggravated by carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of [the] VA." J.A. 169–70.

While Mr. Cerana did not dispute that the VA had his informed consent for the procedure, the Board noted that "[l]iability under § 1151 may also be established if [the] VA furnished treatment without the informed consent of the veteran or his representative in compliance with 38 C.F.R. § 17.32," which details the requirements for informed consent. J.A. 162. The Board further noted that "[i]nformed consent was obtained prior to the surgery which specifically discussed the possible need for further bone debridement." J.A. 166.

Mr. Cerana appealed the Board's decision to the Veterans Court, arguing for the first time that the VA medical providers did not have his informed consent to amputate his toe. On July 8, 2020, a single judge of the Veterans Court affirmed the Board's decision denying Mr. Cerana's compensation for his left toe amputation. *Cerana v. Wilkie*, No. 19-1475, 2020 WL 3815317 (Vet. App. July 8, 2020) (*Veterans Court Decision*). The judge "f[ound] that Mr. Cerana ha[d] waived his informed consent challenge by failing to timely raise it before the Board." *Id.* at *2. The judge explained that Mr. Cerana's arguments before the Board focused on whether the amputation was medically necessary, not whether informed consent was received. *Id.* The judge explained that he "s[aw] no reason why the Board would have adjudicated whether [the] VA had the veteran's informed consent when Mr. Cerana's own statements reflected that [the] VA informed him about the need for amputation." *Id.*

On July 29, 2020, Mr. Cerana moved for reconsideration or a panel review of the Veterans Court's single-judge decision. J.A. 5–15. On September 3, 2020, a panel of the Veterans Court denied Mr. Cerana's motion for reconsideration, granted panel review, and adopted the single-judge decision as the final decision of the Veterans Court. J.A. 16–17. Mr. Cerana appeals the Veterans Court's decision.

DISCUSSION

I

Our jurisdiction to review decisions of the Veterans Court is limited by statute. 38 U.S.C. § 7292. Absent a constitutional issue, we lack jurisdiction to "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2); *see Spicer v. Shinseki*, 752 F.3d 1367, 1369 (Fed. Cir. 2014) ("We therefore generally lack jurisdiction to review challenges to the Board's factual determinations or to any application of law to fact.").

II

On appeal, Mr. Cerana argues that the Veterans Court failed to look at the entire record to determine whether the totality of the evidence supported Mr. Cerana's claim that he was entitled to compensation based on defective informed consent. He asserts that even though he did not raise this issue before the Board, the Board and the Veterans Court were required to consider it under our decision in *Scott v. McDonald*, 789 F.3d 1375 (Fed. Cir. 2015).

In *Scott*, we held that, in appropriate circumstances, a party must exhaust an issue before the Board before raising the issue on appeal to the Veterans Court. *Id.* at 1379. We recognized, however, that in view of the non-adversarial nature of proceedings before the Board, the Board should liberally construe the arguments made by the veteran when determining what issues were raised by the veteran. *Id.* at 1380. We also recognized that this obligation to construe the arguments liberally extends to cases in which the veteran is represented by counsel. *Id.*

In this case, the Veterans Court found that the Board correctly applied *Scott*'s requirements when determining the issues raised by Mr. Cerana. *Veterans Court Decision*, 2020 WL 3815317, at *2. The court acknowledged that,

consistent with *Scott*, the Board needs to consider reasonably raised theories.  But it explained that, here, it saw "no reason why the Board would have adjudicated whether VA had the veteran's informed consent when Mr. Cerana's own statements reflected that [the] VA informed him about the need for amputation."  *Id.*  If this were not clear enough, the Veterans Court also stated that it found that Mr. Cerana waived his informed consent challenge by failing to timely raise it before the Board, and that "because the issue did not arise from the record, we see no fault in the Board not delving into informed consent."  *Id.*

On appeal, Mr. Cerana disagrees with the Veterans Court's determination that, under *Scott*, the record before the Board was insufficient to require the Board to consider the issue of informed consent.  But this challenge on appeal asks us to review an application of law to fact.  As we have held, "[b]ecause the decision to invoke the doctrine of issue exhaustion is a discretionary one, its application is largely a matter of application of law to fact, a question over which we lack jurisdiction."  *Bozeman v. McDonald*, 814 F.3d 1354, 1357 (Fed. Cir. 2016).  Because we lack jurisdiction to review this question, we must dismiss the appeal.

**DISMISSED**

COSTS

No costs.