Citation Nr: 1725251 
Decision Date: 06/15/17 Archive Date: 07/17/17

DOCKET NO. 09-04 229 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for a left hand disability, to include as secondary to service-connected post kidney transplant glomerulonephritis.

2. Entitlement to service connection for a low back disability, to include as secondary to post kidney transplant glomerulonephritis.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Veteran and his wife



ATTORNEY FOR THE BOARD

D. Schechner, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from August 1975 to September 1978. These matters are before the Board of Veterans' Appeals (Board) on appeal from a November 2009 rating decision by the Waco, Texas RO. In February 2015, a videoconference Board hearing was held before the undersigned; a transcript of the hearing is in the record. In April 2015 and March 2016, the Board remanded the matters for additional development. The Board also sought a VHA medical advisory opinion regarding the left hand disability (received in April 2017).

The Board's previous remands also addressed a matter of entitlement to special monthly compensation (SMC) based on the need for aid and attendance. A May 2016 rating decision granted the Veteran SMC based on aid and attendance criteria, effective January 27, 2016. He has not expressed disagreement with this decision, and the matter is no longer before the Board.


FINDINGS OF FACT

1. Competent medical evidence establishes that the Veteran's service connected post kidney transplant glomerulonephritis with history of dialysis was an etiological factor for his development of left hand carpal tunnel syndrome.

2. A low back disability was not manifested in service; lumbar spine arthritis was not manifested within one year following the Veteran's separation from service; and any current low back disability is not shown to be related to his service or to have been caused or aggravated by his service-connected post kidney transplant glomerulonephritis.

CONCLUSIONS OF LAW

1. Secondary service connection for left hand carpal tunnel syndrome is warranted. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2016).

2. Service connection for a low back disability, to include as secondary to post kidney transplant glomerulonephritis, is not warranted. 38 U.S.C.A. §§ 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

Inasmuch as service connection for a left hand disability is being granted, there is no reason to belabor the impact of the VCAA on the matter; any notice or duty to assist omission is harmless. 

VA's duty to notify was satisfied by March 2009 and October 2009 letters. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

During the February 2015 videoconference Board hearing, the undersigned advised the appellant of what is needed to substantiate the claims (evidence of a nexus between the claimed disabilities and his service and/or a service-connected disability); his testimony reflects that he is aware of what is necessary to substantiate the claims.

The Veteran's service treatment records (STRs) are associated with his record, and pertinent postservice treatment records have been secured. The AOJ arranged for VA examinations in October 2009 and June 2015, with an April 2016 addendum opinion; as was noted the Board obtained a VHA advisory opinion in the matter pertaining to left hand disability. As will be discussed in greater detail below, the Board finds the examinations and opinion reports to (cumulatively) be adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303 (2007). The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met.

Legal Criteria, Factual Background, and Analysis

The Board has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss in detail every piece of evidence. See Gonzales v. West, 218 F, 3d, 1378 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as deemed appropriate, and the Board's analysis will focus on what the evidence shows, or fails to show, as to the claims.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a). To substantiate a claim of service connection, there must be evidence of (1) a current disability (for which service connection is sought); (2) incurrence or aggravation of a disease or injury in service; and (3) a causal connection between the disease or injury in service and the current disability. See Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

A disorder first diagnosed after discharge may be service connected if all the evidence, including that pertinent to service, establishes that it was incurred in service. 38 C.F.R. § 3.303(d); Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

Certain chronic diseases (to include arthritis), may be service connected on a presumptive basis if manifested to a compensable degree within a specified period of time postservice (one year for arthritis). 38 U.S.C.A. §§ 1101, 1137; 38 C.F.R. §§ 3.307, 3.309(a). A nexus to service may be established by showing continuity of symptomatology following service. Walker v. Shinseki, 708 F.3d 1331, 1338-40 (Fed. Cir. 2013).

Lay evidence may be competent evidence to establish incurrence. See Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (e.g., a broken leg), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. However, competent medical evidence is necessary where the determinative question is one requiring medical knowledge. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. 

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also mean statements conveying sound medical principles found in medical treatises. Competent medical evidence may also include statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). 

Disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310(a). 

Left hand carpal tunnel syndrome

The Veteran claims that his left hand disability is secondary to his service-connected post kidney transplant glomerulonephritis, to include the treatment thereof with dialysis for 25 years. His STRs are silent for complaints, findings, treatment, or diagnosis regarding the left hand. On April 1978 service separation examination, the hands were normal on clinical evaluation; in a contemporaneous report of medical history, the Veteran denied any history of arthritis or neuritis.

Postservice treatment records are silent regarding the left hand until December 2000, when the Veteran complained of burning and numbness in his hands at night. He was noted to have some symptoms of carpal tunnel syndrome in both hands; he wore a brace on the left hand, with good results. On March 2001 VA treatment, he was noted to have a letter from Dr. Oliver saying that carpal tunnel syndrome might be associated with his renal failure and dialysis; the diagnoses included carpal tunnel syndrome of both wrists. A September 2003 nerve conduction study found severe bilateral carpal tunnel syndrome. In April 2004 the Veteran underwent left carpal tunnel syndrome release, which alleviated his pain. Subsequent treatment records show continuing assessments of carpal tunnel syndrome.

On October 2009 VA examination, the Veteran reported that he had not been able to move his left fingers very well and that he had numbness of the thumb and index and long fingers, with the onset in 2002; he had previously had some pain but this resolved after carpal tunnel release surgery in 2004. He reported diminished grip strength in the hand. He reported no relief with prior physical therapy. There was no history of trauma of the hand or fingers or neoplasm of the hand. There was overall decrease in hand strength and dexterity, as well as limited motion (extension of all digits). X-rays of the left hand were normal.

Following physical examination, the diagnosis was left hand carpal tunnel syndrome status post-surgery for same. The examiner opined that the Veteran's left hand disability is less likely as not (less than 50/50 probability) caused by or a result of his kidney transplant. The examiner noted that the Veteran had developed carpal tunnel syndrome with associated pain, numbness, and inability to fully extend his left hand digits; the symptoms were improved but the full extension capability of the left digits did not improve after surgery in 2004. The examiner noted that the Veteran had failed right kidney transplants in 1984 and 1988 but a successful transplant in 2005, one year after the carpal tunnel surgery; the examiner also noted that the Veteran had been on renal dialysis treatments via the shunt in his left arm for 25 years before the successful right kidney transplant in 2005. The examiner opined that because the onset of the Veteran's left hand/fingers symptoms began in 2002, three years before the successful right kidney transplant, it would seem very improbable that the kidney transplant could have caused his left hand/fingers symptoms. The examiner also opined that it would seem very improbable that the prior two right kidney transplants in 1984 and 1988, both of which were unsuccessful, would have anything to do with his left hand/fingers carpal tunnel syndrome because the Veteran did not have any greater residual left hand/fingers symptoms compared to that on the right hand/fingers, except for the left fingers' full extension incapability residual but none on the right. The examiner opined that if the carpal tunnel syndrome symptoms were due to any of the kidney transplants, the preoperative symptoms and the residual postoperative symptoms should have been identical on both sides, which was not the case.

At the February 2015 hearing before the Board, the Veteran testified that he was on dialysis for 25 years, and he believed this caused deterioration in his body and affected his hand and his back.

On June 2015 VA examination (pursuant to the Board's April 2015 remand), the Veteran reported that in the early 1980s, his left hand began to shrivel up and he could not stretch out his fingers; he reported that the hand did not function. He reported that the condition had progressively worsened; he could not make a fist or straighten out his fingers. He had been treated with a nerve stimulator. Following physical examination, the diagnosis was neuropathy of the left hand from carpal tunnel syndrome. The examiner opined that the Veteran's current left hand disability was less likely than not proximately due to the service-connected post kidney transplant glomerulonephritis. The examiner opined that the Veteran's glomerulonephritis did not cause or aggravate his left hand condition, which was a result of neurologic damage.

In March 2016 the Board found that the June 2015 VA examiner did not specifically address the impairment/effects (on the left hand) of the Veteran's 25-year history of dialysis for his service-connected kidney disease, as was requested in an April 2015 remand. The matter was remanded for an addendum medical opinion.

In an April 2016 addendum opinion, the June 2015 VA examiner opined that the Veteran's left hand disability is less likely than not a result of or aggravated by his dialysis for his service-connected post kidney transplant glomerulonephritis. The examiner opined that the left hand disability is due to carpal tunnel syndrome, and that the Veteran's kidneys would not have affected his carpal tunnel syndrome. 

In an April 2017 VHA advisory medical opinion, the consulting expert/neurologist noted the Veteran's long history of dialysis as well as his bilateral carpal tunnel syndrome. Regarding whether many years of dialysis and needle sticks into the graft caused the Veteran's carpal tunnel syndrome, the expert opined no, explaining that carpal tunnel syndrome is a disorder of entrapment of the median nerve as it enters the hand at the wrist, whereas dialysis grafts are typically placed much more proximal to that point. He stated that the dialysis needle is not placed through the median nerve, as this would destroy the nerve at a site much more proximal than the wrist and would result in the severing of the nerve with instant and complete loss of function, and not chronic progressive dysfunction of the nerve as the Veteran reported. However, the expert stated further that it is well established that the cause of carpal tunnel syndrome in patients on hemodialysis is chronic deposition of alpha-2 microglobulin which is not able to be completely filtered out by the dialysis membrane (and cited to medical literature regarding dialysis-related amyloidosis). The expert stated that these proteins deposit in various sites, including the tunnel through the carpal bones (wrist) that includes the median nerve, and produces the "carpal tunnel syndrome".

It is not in dispute that the Veteran currently has a left hand disability (carpal tunnel syndrome). It is also not in dispute that he has established service connection for post kidney transplant glomerulonephritis. While his contentions have focused on dialysis needles and shunts inserted in treatment for the service connected disability being the cause of the left hand carpal tunnel syndrome, the VHA consulting neurologist's opinion is evidence (given the extensive rationale provided) that the dialysis needles and shunts were not the cause of the carpal tunnel syndrome. However, the consulting expert went on to explain (with citation to medical literature) that it is well known that in patients on dialysis carpal tunnel syndrome results from deposits in the tunnel of alpha 2 microglobulin which the dialysis process is unable to filter out. The opinion provides an alternate theory for establishing secondary service connection for the left hand carpal tunnel syndrome, i.e., that it results from blood chemistry changes associated with kidney disease and the dialysis process. The consulting VA expert has subject matter expertise, and there is no medical opinion to the contrary. The Board finds the opinion persuasive. In light of the foregoing there is no need to discuss further alternate theories of entitlement. 

Accordingly, service connection for left hand carpal tunnel syndrome as secondary to post kidney transplant glomerulonephritis (with history of dialysis) is warranted.

Low back disability

The Veteran claims that his low back disability is secondary to his service-connected post kidney transplant glomerulonephritis, and its 25 years of treatment with dialysis. His STRs are silent for any complaints, findings, treatment, or diagnosis regarding the back. On April 1978 service separation examination, the spine was normal on clinical evaluation; in a contemporaneous report of medical history, he denied any history of recurrent back pain.

Postservice treatment records are silent regarding the Veteran's back until February 2009, when he sought emergency room treatment for chronic low back pain; he reported that the pain began three days earlier, with no recent trauma. The diagnoses were chronic low back pain and degenerative joint disease. A July 2009 statement from West Texas Orthopedics stated that in April 2009 the Veteran underwent lumbar laminectomy at L3-4 and L4-5 for severe spinal and foraminal stenosis. Private treatment records reflect that he underwent physical therapy. On July 2009 postoperative follow-up treatment, he was doing well and tolerating activities; he was not taking any medication for his back.

On October 2009 VA examination, the Veteran reported that he noted vague, atraumatic, and first time ever onset of low back pain with right leg pain and left great toe pain in about 2006; because it did not respond to physical therapy and medication, he saw his neck spinal surgeon in April 2009 and underwent a laminectomy at L3, L4, and L5 with foraminotomy and medial facetectomy. He reported that since the surgery, he still had a right foot drop and low back pain but no more right leg pain. There was no history of trauma or neoplasm of the spine. He reported fatigue, decreased motion, stiffness, weakness, and spasms, and he walked with a cane; he was unable to walk for more than a few yards, and he had to sit down if standing for more than 10 to 15 minutes due to worsening low back pain. X-rays of the lumbosacral spine showed degenerative changes with narrowed discs of L2 through L5.

Following physical examination, the diagnosis was lumbar stenosis and lumbar degenerative arthritis. The examiner opined that the Veteran's low back arthritis is less likely as not (less than 50/50 probability) caused by or a result of the post service history of right kidney transplants in 1984, 1988, and (successfully) in 2005. The examiner noted that in 2006 the Veteran noted the onset of low back pain with right leg and left great toe pain that persisted despite physical therapy and analgesic treatments, and underwent lumbar surgery in April 2009 for spinal stenosis of L3, L4, and L5. The examiner opined that, even though the Veteran dates the onset of the low back arthritis to 2006, while the last and successful right kidney transplant took place in 2005, and with the prior unsuccessful right kidney transplants in 1984 and 1988, the procedures of kidney transplants do not enter into the area of the lumbar spine, spinal canal, or spinal nerve; and, therefore, cannot produce lumbar spine arthritis.

In July 2010, the Veteran underwent L3-4 anterior lumbar interbody fusion, placement of a bone cage at L3-4 and L4-5, and plating at L3-4 and L4-5, to treat recurrent disc herniation at L3-4 and spondylolisthesis at L5-S1 with foraminal stenosis.

At the February 2015 hearing before the Board, the Veteran testified that he was on dialysis for 25 years, and believed this caused deterioration and wear and tear to his body and affected his back.

On June 2015 VA examination (pursuant to the Board's April 2015 remand), the Veteran reported that in the mid-1990s he began to have pain in the lower back; the condition had progressively worsened with low back pain, right leg numbness, tingling and pain, and now left leg symptoms as well. He took gabapentin and hydrocodone for his back condition, and he had undergone lumbar surgery in 2009 and 2010. Following physical examination, the diagnoses were lumbar disc disease with surgery and radiculopathy, and intervertebral disc syndrome. The examiner opined that the Veteran's current low back disability was less likely than not (less than 50 percent probability) proximately due to or the result of his service-connected post kidney transplant glomerulonephritis. The examiner opined that the Veteran's glomerulonephritis did not cause or aggravate his low back condition, which was a result of disc degeneration and spinal stenosis.

In March 2016 the Board found that the June 2015 VA examiner did not specifically address the effect (on the low back) of the Veteran's 25-year history of dialysis for his service-connected kidney disease, as was specifically requested in an April 2015 remand. The matter was remanded for an addendum medical opinion.

In an April 2016 addendum opinion, the June 2015 VA examiner opined that the Veteran's low back disability is less likely than not a result of or aggravated by his dialysis for his service-connected post kidney transplant glomerulonephritis. The examiner opined that the back disability is due to degenerative disc disease, adding that the Veteran's kidneys would not have affected his degenerative disc disease.

A chronic low back disability was not noted in service and arthritis of the low back was not clinically noted postservice prior to 2009. Accordingly, service connection for a low back disability on the basis that such disability became manifest in service and persisted or for arthritis of the lumbar spine on a presumptive basis (as a chronic disease under 38 C.F.R. §§ 1112, 1137; 38 C.F.R. §§ 3.307, 3.309) is not warranted. 

The Board finds that the October 2009 and June 2015 VA examiners' reports (including the April 2016 addendum opinion) concluding that the Veteran's current low back disability is unrelated to service or to a service-connected disability (cumulatively) warrant substantial probative weight, as they incorporate findings and statements made by the Veteran throughout the pendency of this claim, were based on detailed physical evaluations and thorough reviews of the record, and explain why the complaints and findings shown do not support a nexus between any diagnosed low back disability and the Veteran's service or his service-connected kidney disease. The examiners opined that the Veteran's kidney disability, or treatment thereof, including by surgery, did not cause or aggravate his low back disability of degenerative disc disease. They include rationale that points to factual data (including the anatomy involved), and the Board finds the opinions persuasive. 

The question of whether a disability such as kidney disease, or the treatment thereof, causes or aggravates another disability (such as lumbar spine degenerative disc disease) is a medical question that is beyond the scope of common knowledge or capable of resolution by lay observation; it requires medical expertise. Consequently, the Veteran's own opinion is not competent evidence in this matter. See Jandreau, supra. The preponderance of the evidence is against the claim of service connection for a low back disability, and the appeal in the matter must be denied.


ORDER

Service connection for a left hand disability as secondary to the Veteran's service connected post-kidney transplant glomerulonephritis is granted.

Service connection for a low back disability, to include as secondary to post kidney transplant glomerulonephritis, is denied.


____________________________________________
George R. Senyk
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs