Citation Nr: 1736725 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 12-12 583 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to increased ratings for service-connected low back disability, currently assigned "staged" ratings of 0 percent prior to November 3, 2015 and 10 percent from that date.


REPRESENTATION

Appellant represented by: Florida Department of Veterans Affairs


ATTORNEY FOR THE BOARD

M. Yuan, Associate Counsel



INTRODUCTION

The appellant is a Veteran who served on active duty from September 2001 to September 2007. This matter is before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision of a Department of Veteran Affairs (VA) Regional Office (RO) that granted service connection for low back disability, rated 0 percent, from September 25, 2007. A subsequent September 2015 rating decision increased the rating for such disability to 10 percent from November 3, 2015. Thus, the issue on appeal has been amended to reflect consideration of "staged" ratings. The case was previously remanded in September 2015, February 2016, and December 2016 by other Veterans Law Judges (VLJs); it is now before the undersigned.


FINDINGS OF FACT

1. The evidence reasonably shows that, throughout the periods on appeal, the Veteran's service-connected low back disability has been productive of abnormal spinal contour in the form of scoliosis.

2. However, at no point during the periods on appeal is the Veteran's low back disability shown to be productive of forward flexion limited to 30 degrees or less, ankylosis of the entire thoracolumbar spine, or incapacitating episodes of intervertebral dis syndrome (IVDS).


CONCLUSION OF LAW

A 20 percent rating (but no higher) is warranted for service-connected low back disability throughout all periods on appeal. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.71a, Code (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA)

This appeal is from the initial rating assigned with the grant of service connection. The statutory scheme contemplates that once a decision awarding service connection, disability ratings, and effective dates has been made, statutory notice has served its purpose, and its application is no longer required because the claim has already been substantiated. Thus, VA's duty to notify was satisfied by a September 2008 letter. The Veteran has had ample opportunity to respond and has not alleged that notice was less than adequate. 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

In addition, the Veteran's service treatment records (STRs) and pertinent postservice treatment records have been secured. Although the Veteran's STRs are not complete, an April 2009 VA memorandum documents the extensive (but ultimately unsuccessful) efforts to recover complete STRs from the appropriate sources, including the Veteran himself. Notably, the Veteran has personally indicated, in a February 2009 statement, that many service treatment records were lost prior to separation. Thus, the Board finds that the unavailability of the Veteran's complete treatment records has been well-established and documented for the record. The prior December 2016 Board remand directed that the Agency of Original Jurisdiction (AOJ) verify the Veteran's address, resend all correspondence returned as undeliverable, obtain identifying information needed to secure copies of updated VA and private treatment records, notify the Veteran of provisions pertaining to the failure to report for scheduled VA examinations, and schedule a contemporaneous examination. After reviewing the record, the Board finds that the AOJ has substantially complied with those remand instructions. Documents in the record reflect the Veteran was contacted to verify his current address and inform him that pertinent documents would be resent. Moreover, a notification letter pursuant to the remand orders was sent to the Veteran in December 2016 and, as described below, a contemporaneous VA examination was conducted in March 2017.

VA examinations were conducted in conjunction with the present appeal in May 2009, November 2015, and March 2017 (pursuant to the prior remand). Together, the reports of those examinations describe the Veteran's low back disability in sufficient detail to allow for application of the pertinent rating criteria. There is no evidence or allegation suggesting the Veteran's low back disability has worsened since the most recent VA examination. The Veteran has not identified any pertinent evidence that remains outstanding. In fact, he has persistently alleged that he has not sought significant treatment for his low back disability since discharge. VA's duty to assist is met.

Legal Criteria, Factual Background, and Analysis

Disability ratings are assigned in accordance with VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from a disability. See 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. When a question arises as to which of two ratings shall be applied under a particular diagnostic code, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7.

Separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings." See Fenderson v. West, 12 Vet. App, 119 (1999).

The Veteran's low back disability is rated under the General Rating Formula for Diseases and Injuries of the Spine, which provides for a 10 percent rating for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. 

A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or combined range of motion of the thoracolumbar spine not greater than 120 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 CFR 4.71a

A 40 percent rating is warranted for forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. A maximum 100 percent rating is warranted for unfavorable ankylosis of the entire spine. Id.

In determining the degree of limitation of motion, the provisions of 38 C.F.R. §§ 4.10, 4.40, and 4.45 are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995). Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40. 

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity, or atrophy of disuse. 38 C.F.R. § 4.45.

The evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. However, § 4.14 does not preclude the assignment of separate evaluations for separate and distinct symptomatology where none of the symptomatology justifying an evaluation under one diagnostic code is duplicative of or overlapping with the symptomatology justifying an evaluation under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259, 262 (1994).

The Veteran's service enlistment examination report noted no low back problems. January 2006 STRs note low back pain for three weeks that was worse after recent straining and lifting. There was no radiating pain, bowel or bladder dysfunction, limb numbness or weakness, or urinary symptoms. Physical examination noted muscle spasm of the right paraspinal but no abnormal spinal contour or gait. Range of motion testing was not noted. On August 2007 separation examination, the examiner noted lumbago that was controlled with stretching exercises. 

Postservice, January 2009 VA treatment records show the Veteran had chronic back pain in his lower back that he said began in 2005. He said he was given physical therapy during active duty and was taking Tylenol. His last reported physical therapy was in 2007 and he denied any pain in his legs. He had not been to a physician since his military discharge. On examination, range of motion was normal and no gross deformity was noted. 

On May 2009 VA examination, the Veteran reported chronic low back pain that began in service after lifting heavy objects. He said he had continued back pain ever since but denied any leg pain, numbness, or paresthesias. He also denied any bowel or bladder dysfunction. The Veteran also denied any history of hospitalization, surgery, trauma, neoplasm, falls, or unsteadiness. He denied any fatigue, decreased motion, stiffness, weakness, or spasms, but said his low back pain was worse with activity, describing it as a moderate, dull ache that was occasionally sharp. It was also said to occur weekly to monthly and last for hours. He denied any radiating pain. He also denied any incapacitating episodes of spine disease or limitation to walking. On physical examination, posture and head position were normal. There was no abnormal spine curvature or objective abnormality of thoracic sacrospinalis noted. There was no muscle spasm, localized tenderness, or guarding severe enough to cause abnormal gait or spinal contour. Muscle strength was normal throughout and there was no sign of atrophy. Sensation and reflexes were also normal. Range of motion studies found active flexion to 90 degrees, active extension to 30 degrees, active left lateral flexion to 30 degrees, active left lateral rotation to 30 degrees, active right lateral flexion to 30 degrees, and active right lateral rotation to 30 degrees. Combined thoracolumbar spine range of motion was 240 degrees. There was no objective evidence of pain on active motion. The examiner also noted no change with repetitive testing. X-rays were not available for review at the time. 

In January 2010, the Veteran presented with complaints of low back pain. He said he bent forward to feed his dog the prior afternoon and, on straightening, noted increasing back muscle spasms. The diagnosis was low back pain. Physical examination found a positive sacral flexion test at the right, but the Veteran denied any tenderness at the sacroiliac level on palpation. Straight leg raise tests were negative. X-rays found disc narrowing at the L4-5 level with mild scoliosis.

On November 2015 VA examination, the Veteran was diagnosed with a strain. He reported low back pain occurred at random and denied having medical evaluations over the prior several years. He also denied any flare-ups of back disability. However, he endorsed functional impairment insofar as he could not perform heavy lifting. Range of motion studies found forward flexion to 70 degrees, extension to 25 degrees, right lateral flexion to 25 degrees, left lateral flexion to 25 degrees, right lateral rotation to 25 degrees, and left lateral rotation to 25 degrees. Range of motion itself was not felt to contribute to functional loss, and no pain was noted on examination. There was no pain evidenced with weight-bearing, but the examiner did note mild paraspinal tenderness to palpation. On repetitive testing, there was no change or loss of function. The examination was not conducted immediately after repetitive use over time, and the examiner felt it was neither medically consistent nor inconsistent with the Veteran's statements describing functional loss with such use. He could not say whether pain, weakness, fatigability, or incoordination significantly limited functional ability with such use without resorting to mere speculation because of a comorbid back condition (lumbar disc degeneration) that he felt was not secondary to lumbar strain, but rather a common age-related development. Guarding and muscle spasms were not noted. Decreased range of motion was felt to be the sole contributing factor of his disability. Muscle strength, reflexes, and sensation were all normal. Straight leg raising tests were negative and there was no evidence of radicular pain or other symptoms of radiculopathy. There was also no evidence of ankylosis or other neurological abnormalities. The Veteran did not use assistive devices to help him move and the examiner did not feel his function was so impaired that the Veteran was be equally served by amputation with prosthesis. No other pertinent findings were noted. Imaging studies were not performed, but the examiner noted no evidence of thoracic vertebral fracture with loss of 50 percent or more in height. 

On March 2017 VA examination, the Veteran said he had pain and difficulty standing or sitting for a long time. He also reported tingling in both feet and said that bending down worsens his pain. He took over-the-counter medication for pain and had not seen any medical provider for his back in years because the diagnosis and treatment were always the same. The examiner noted he appeared competent and had a good history for the examination. The Veteran denied any flare-ups of back disability. Range of motion studies found forward flexion to 65 degrees, extension to 20 degrees, right lateral flexion to 20 degrees, left lateral flexion to 30 degrees, right lateral rotation to 30 degrees, and left lateral rotation to 30 degrees. Range of motion itself was not felt to contribute to functional loss, but the examiner noted that pain was noted on flexion, extension, right lateral flexion, and left lateral flexion, and did cause functional loss. There was, however, no evidence of pain with weight-bearing. The examiner did note paraspinal edema and tenderness to palpation along the L1 to S2 vertebrae. No change was found after repetitive testing. The examination was not being conducted immediately after repetitive use over time, but the examiner noted that the results were medically consistent with the Veteran's statements describing his functional loss during such periods. Based on such statements and the examination, the examiner noted that pain and lack of endurance significantly limited functional ability with repeated use over a period of time. In terms of range of motion, the examiner estimated that such use would result in further limitation of left lateral flexion to 20 degrees. However, no other ranges of motion were felt to be affected by this impairment. There was guarding in the thoracolumbar spine, but none that resulted in abnormal gait or spinal contour. However, the examiner did note that the scoliosis documented in January 2010 X-rays would have developed over a long period of time, and thus should have been part of the original service-connected disability. The examiner also noted that swelling, disturbance of locomotion, and interference with standing added to his disability. Muscle strength, reflexes, and sensation were normal. Straight leg raising tests were negative, and the examiner noted no radicular pain or any other signs or symptoms due to radiculopathy. There was no ankylosis of the spine and the Veteran did not appear to have any other neurologic abnormalities. The examiner did not find evidence of intervertebral disc syndrome (IVDS), but the examiner did note that the disc narrowing documented in January 2010 X-rays showed degenerative disc disease (DDD) that also would have developed over a long period of time and should have been included in the original service-connected diagnosis. Notably, both scoliosis and DDD were felt to be a continuation and worsening of his originally service-connected disability rather than separate but related disabilities. The Veteran did not use any assistive devices. The examiner did not feel he was so impaired that he would be equally served by amputation with prosthesis. Examination of the feet revealed mild edema unrelated to his back disability, which the examiner felt explained the reported tingling. He had no pertinent scars. The examiner noted no change with active versus passive range of motion, or with weight-bearing versus nonweight-bearing range of motion on examination. 

As an initial matter, the Board finds that the evidence reasonably shows that, throughout both periods on appeal, the Veteran's service-connected low back disability has been productive of lumbar DDD and mild scoliosis. In so finding, the Board acknowledges that both the November 2015 and May 2009 VA examiners found no such diagnoses. However, neither of those examiners conducted or reviewed imaging studies in delivering their respective reports. This is particularly problematic for the November 2015 examiner, as the imaging reports first documenting scoliosis and DDD were already in the record at the time of that examination. Consequently, the Board finds the March 2017 examiner's report, which did review and consider imaging studies, to be the most probative in this regard. Moreover, the March 2017 examiner's opinion that such conditions develop over a long period of time, and thus should have been included in the original service-connected diagnosis, also reasonably shows that they have been present throughout the periods on appeal. Crucially, there is no probative medical evidence (e.g., imaging studies or other medical opinions) in the record refuting that finding. While the Board is aware that the specific language in the rating criteria contemplates "muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour" and that the March 2017 examiner also noted no such spasm or guarding on the same examination, the Veteran's service-connected low back disability need not fit the rating criteria precisely, and may instead be rated based on the pathology shown by the medical evidence. 

Unfortunately, however, ratings in excess of 20 percent require either (1) forward flexion of the thoracolumbar spine to 30 degrees or less or (2) some form of ankylosis of the entire thoracolumbar spine. 38 C.F.R. § 4.71a. At no point during either period on appeal is the Veteran shown to have such drastic limitation of motion or any degree of ankylosis. Notably, absent the documented scoliosis, the range of motion studies in the record would fail to show limitation warranting the 20 percent rating being granted herein. Therefore, there is no basis for awarding a rating in excess of 20 percent for such disability. 

The Board has considered whether separate ratings are warranted based on neurological or radicular manifestations of low back disability. To that end, the Board notes that the Veteran has never alleged, nor is there any evidence of, neurological impairment related to bowel or bladder function. In addition, while he has alleged tingling sensations in his feet (on March 2017 examination), there is no clinical evidence of actual neuropathic or radicular symptoms at any point during the period on appeal. Notably, the March 2017 examiner noted that the reported tingling was due to an unrelated pedal edema. Thus, separate ratings based on neurological or radicular manifestations are not warranted.

The Board has also considered whether, pursuant to Rice v. Shinseki, 22 Vet. App. 447, 455 (2009), the matter of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) has been raised by the record. However, there is no evidence or allegation in the record suggesting that the Veteran's service-connected low back disability on appeal has rendered him unemployable. In so finding, the Board acknowledges that the Veteran has indicated that he is unsure whether he can perform full-time work, but has not suggested that he has tried and failed to do so or that he is otherwise wholly unable to work. Notably, the only notation indicating unemployment is on May 2009 examination, and a clarifying note revealed he was attending business school at the time. Thus, TDIU has not been raised by the record. Notwithstanding that fact, the Veteran is certainly free to advance such a claim independently of this appeal. 

In light of the above, the Board finds the evidence is at least in relative equipoise as to whether a 20 percent rating is warranted throughout the periods on appeal; to that extent, any remaining reasonable doubt must be resolved in the Veteran's favor, and the appeal must be granted. However, the preponderance of the evidence is against finding a higher 40 percent rating is warranted at any point during the periods on appeal; to that extent, the benefit of the doubt rule does not apply, and the appeal must be denied.

ORDER

A 20 percent rating (but not higher) for service-connected low back disability is granted throughout the periods on appeal.





____________________________________________
VICTORIA MOSHIASHWILI
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs