Citation Nr: 1744001 
Decision Date: 09/18/17 Archive Date: 10/10/17

DOCKET NO. 13-23 457 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to a disability rating in excess of 10 percent for cervical spine degenerative changes. 

2. Entitlement to a disability rating in excess of 20 percent for lumbar spine degenerative changes, status post fusion surgery with scar prior to April 11, 2016 and entitlement to a disability rating in excess of 40 percent for it from that date.

3. Entitlement to additional compensation for right lower extremity radiculopathy, currently evaluated as 10 percent disabling from April 11, 2016.

4. Entitlement to additional compensation for left lower extremity radiculopathy, currently evaluated as 10 percent disabling from April 11, 2016.

5. Entitlement to a total disability rating for compensation purposes based upon individual unemployability due to service-connected disabilities (TDIU). 



REPRESENTATION

Appellant represented by: Timothy M. White, Attorney at Law


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

C. Lawson, Counsel


INTRODUCTION

The Veteran served on active duty from March 1982 to September 1989.

This matter comes to the Board of Veterans' Appeals (Board) on appeal following a March 2013 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA). The Veteran presented testimony at a Board hearing before the undersigned Veterans Law Judge in December 2013, and a transcript of the hearing is of record. The Board remanded the case to the RO in June 2015. 

Originally, after the claim was filed in December 2012, the RO assigned 10 and 20 percent ratings for the Veteran's service-connected cervical and lumbar spine arthritis disabilities, respectively, and did not assign any ratings for right or left lower extremity radiculopathy associated with the lumbar spine disability. However, in August 2016, the RO compensated the Veteran with 2 separate 10 percent ratings, one for right lower extremity radiculopathy associated with lumbar spine disability, and the other for left lower extremity radiculopathy associated with lumbar spine disability, both effective from April 11, 2016. The matters of any additional compensation for them from December 13, 2012 are considered to be on appeal as part of the Veteran's December 2012 claim for an increased rating for his service-connected lumbar spine disability, filed on that date. See 38 C.F.R. § 4.71a, Note (1) (2016) and AB v. Brown, 6 Vet. App. 35 (1993). There had been prior final decisions on compensation, the most recent one being in May 2008. 

Also in August 2016, the RO increased the Veteran's rating for his service-connected lumbar spine degenerative arthritis disability from 20 to 40 percent, effective from April 11, 2016. 

In June 2015, the Board found that the matter of entitlement to a TDIU was on appeal as having been raised at the Veteran's December 2013 hearing, due to his service-connected cervical and lumbar spine disabilities. The Board remanded, in part to have the Veteran complete a VA Form 21-8940, and when he did so in June 2015, he indicated that he was claiming TDIU due to the combined effect of all of his service-connected disabilities, including sinusitis and hemorrhoids.

In October 2014, the Veteran perfected an appeal to the RO's April 2014 denial of service connection for a psychiatric disorder. Likewise, in April 2017, the Veteran perfected an appeal as to the issues of entitlement to earlier effective dates for the grant of the 40 percent rating for the lumbar spine and the grants of service connection for radiculopathy of the right and left lower extremities. In the respective substantive appeals, he requested Board videoconference hearings on those matters. The videoconference hearing before the Board has not yet taken place. As a result, the Board does not have jurisdiction to review those issues at this time.

The issue of entitlement to TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. During the entirety of the claim, the Veteran has not had cervical spine forward flexion limited to 30 degrees; a combined range of motion of his cervical spine which is 170 or less; or muscle spasm or guarding severe enough to result in abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

2. Prior to April 11, 2016, the Veteran did not have forward flexion of his lumbar spine limited to 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine; or intervertebral disc syndrome with incapacitating episodes having a total duration of at least 4 weeks during the past 12 months. 

3. From April 11, 2016, the Veteran does not have unfavorable ankylosis of his entire thoracolumbar spine; or intervertebral disc syndrome with incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 

4. During the entirety of the claim, the Veteran's 12cm by 0.2cm lumbar spine surgical fusion scar has not been painful or unstable. 

5. From December 13, 2012, to April 10, 2016, the Veteran had no more than mild incomplete paralysis of his left anterior crural nerve.

6. Prior to November 21, 2013, the Veteran did not have at least mild incomplete paralysis of his right anterior crural nerve. 

7. From November 21, 2013 to April 10, 2016, the Veteran had no more than mild incomplete paralysis of his right anterior crural nerve.

8. From April 11, 2016, the Veteran has had no more than moderate incomplete paralysis of his right and left anterior crural nerves. 


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 10 percent for cervical spine degenerative changes are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.40, 4.45, 4.71a, and Diagnostic Code 5242 (2016).

2. The criteria for a disability rating in excess of 20 percent for lumbar spine degenerative arthritis status post fusion surgery with scar prior to April 11, 2016 or in excess of 40 percent from that date are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.40, 4.45, 4.71a, 4.118, and Diagnostic Code 5242 (2016).

3. The criteria for a 10 percent rating, but not higher, for left lower extremity radiculopathy from December 13, 2012 to April 10, 2016, are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.124a, Diagnostic Code 8726 (2016).

4. The criteria for a compensable disability rating for right lower extremity radiculopathy prior to November 21, 2013 are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.124a, Diagnostic Code 8726 (2016).

5. The criteria for a 10 percent rating, but not higher, for right lower extremity radiculopathy from November 21, 2013 to April 10, 2016 are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.124a, Diagnostic Code 8726 (2016).

6. The criteria for 20 percent ratings, but not higher, for right and left lower extremity radiculopathy from April 11, 2016 are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.124a, Diagnostic Code 8726 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

With respect to the Veteran's claims being decided herein, VA has met all statutory and regulatory notice and duty to assist provisions, and it has not been contended otherwise. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Disability ratings are based upon VA's Schedule for Rating Disabilities as set forth in 38 C.F.R. Part 4. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity in civil occupations. 38 U.S.C.A. § 1155. The disability must be viewed in relation to its history. 38 C.F.R. § 4.1. A higher evaluation shall be assigned where the disability picture more nearly approximates the criteria for the next higher evaluation. 38 C.F.R. § 4.7.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, assignment of staged ratings would be permissible. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The Veteran appeals for higher ratings for his service-connected cervical and lumbar spine disabilities, the surgical scar attendant to the lumbar spine fusion, and the right and left lower extremity radiculopathy which is associated with the lumbar spine disability. 

The Veteran filed the current claim for an increased rating in December 2012. Accordingly, we are primarily concerned with the level of severity of each of the disabilities mentioned immediately above, from December 2011 to the present. AB v. Brown, 6 Vet. App. 35 (1993).

The Veteran's service-connected cervical spine disorder is currently rated as 10 percent disabling for the entirety of the rating period, and his lumbar spine arthritis with scar is currently rated as 20 percent disabling prior to April 11, 2016, and as 40 percent disabling from that date. The ratings are under 38 C.F.R. § 4.71a, Diagnostic Code 5242. Provided the diagnostic criteria are met, a separate compensable rating for a scar may be warranted under 38 C.F.R. § 4.118. His right and left lower extremity radiculopathy are rated under 38 C.F.R. § 4.124a, Diagnostic Code 8726. The VA examiner in April 2016 found that the nerve roots involved were L2/L3/L4 bilaterally.

Under 38 C.F.R. § 4.71a's General Rating Formula for Diseases and Injuries of the Spine, forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height warrants a 10 percent rating. Forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis warrants a 20 percent rating. 

Under 38 C.F.R. § 4.71a's General Rating Formula for Diseases and Injuries of the Spine, a 20 percent rating is warranted when forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted when there is forward flexion of thoracolumbar spine to 30 degrees or less; or favorable ankylosis of his entire thoracolumbar spine. A 50 percent rating is warranted when there is unfavorable ankylosis of the entire thoracolumbar spine. 

Note (1): Evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code.

Under 38 C.F.R. § 4.40, functional loss may be due to pain, supported by adequate pathology and evidenced by visible behavior on motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Under 38 U.S.C.A. § 4.45, factors of joint disability include increased or limited motion, weakness, fatigability, or painful movement, swelling, deformity or disuse atrophy.

The Formula for Rating Intervertebral Disc Syndrome based on Incapacitating Episodes provides:

With incapacitating episodes having a total duration of at least six weeks during the past 12 months.......................................................................................................60

With incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months.............................................................40

With incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months...........................................................20

With incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months............................................................10

NOTE (1) indicates that an incapacitating episode is one a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 

Under 38 C.F.R. § 4.118, a compensable rating can be assigned for a scar if it is unstable or painful. 

Diagnostic Code 8726 is for the anterior crural (femoral) nerve and provides for a 10 percent rating for mild anterior crural nerve incomplete paralysis, a 20 percent rating for moderate incomplete paralysis, and a 30 percent rating for severe incomplete paralysis. A 40 percent rating is provided for complete paralysis of the anterior crural nerve, with paralysis of the quadriceps extensor muscles. 

The provisions of 38 C.F.R. § 4.123 indicate that neuritis characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe incomplete paralysis. The maximum rating which may be assigned for neuritis not characterized by organic changes will be that for moderate, or with sciatic nerve involvement, for moderately severe incomplete paralysis. 

As detailed by the record, the Veteran has been provided VA examinations in connection with the claims on appeal, as will be detailed further below. With regard to the lumbar and cervical spine claims, the Veteran received two VA examinations: the first 2013 and the second in 2016, both of which included range of motion testing. In July 2016, the United States Court of Appeals for Veterans Claims (the Court) decided Correia v. McDonald, 28 Vet. App. 158 (2016). In Correia, which addresses musculoskeletal claims where pain on motion is involved, the Court held that 38 C.F.R. § 4.59 creates range of motion testing requirements with which VA must comply. 38 C.F.R. § 4.59 provides, "The joints involved should be tested for pain on both active and passive motion, in weight-bearing and non-weight-bearing, and, if possible, with the range of the opposite undamaged joint."

Applying Correia to this case, the Board notes that although the VA examinations do not include all of the range of motion testing (active and passive or weight-bearing and non-weight bearing), the examinations clearly document that the Veteran does not have ankylosis. The Board finds that a remand for an additional VA examination addressing the Veteran's range of motion in active and passive motions and in weight-bearing and non-weight bearing could not avail the Veteran of a higher rating for his lumbar spine and cervical disability. In this regard, the Board notes that the Veteran's lumbar spine condition was shown to have worsened to 40 percent disabling from April 11, 2016, and it is no longer possible to capture active and passive range of motion testing or weight-bearing and non-weight bearing ranges of motion prior to that date for either the lumbar or the cervical spine. Accordingly, a remand of this claim for retrospective compliance with Correia is not necessary. 

VA treatment records include a February 2012 neurological assessment with chief complaint of syncope. At that time, he reported a history of low back surgery in 1996 with "persistent tingling left leg below the knee since." Examination revealed 5/5 strength in all extremities with deep tendon reflexes 1+ throughout and normal muscle tone. Touch and pinprick as well as position sense were all intact in the lower extremities. A December 2012 VA treatment record notes that the Veteran reported no radiation of pain to legs, no bladder or bowel symptoms. Neurology assessment was "Intact. No demonstrable deficit."

On VA examination of the Veteran's cervical spine in February 2013, the Veteran reported that he had flare-ups of cervical spine disability causing pain, discomfort, and difficulty in movement. Cervical spine forward flexion, extension backwards, and right and left lateral flexion were each to 45 degrees or greater, with no objective evidence of painful motion. Right and left lateral rotation were to 80 degrees or greater, with no objective evidence of painful motion. The Veteran was able to perform repetitive use testing with the same results. He did not have localized tenderness, pain to palpation for joints/soft tissue, guarding or muscle spasm, or atrophy. His sensory examination was all normal, with no evidence of radiculopathy, and no other related neurologic abnormalities. He did not have cervical spine intervertebral disc syndrome. The examiner indicated that his cervical spine disability did not impact his ability to work. 

On VA examination of the Veteran's thoracolumbar spine in February 2013, the Veteran reported that he had flare-ups of thoracolumbar spine causing limited abilities and nonstop pain. Thoracolumbar spine forward flexion was to 60 degrees, with objective evidence of painful motion beginning then. Extension backwards was to 30 degrees, and right and left lateral flexion and rotation were each to 30 degrees or greater, with no objective evidence of painful motion. The Veteran was able to perform repetitive use testing with the same results. He did not have localized tenderness, pain to palpation for joints/soft tissue, or guarding or muscle spasm or atrophy. His lower extremity muscle strength was all normal. Right knee and ankle reflexes were 2+, and left knee and ankle reflexes were 1+. Sensory examination results were all normal in the lower extremities. There was no evidence of radiculopathy or other neurological abnormalities. A scars examination revealed that the 12 cm by 0.2 cm surgical fusion scar was not painful or unstable. 

On VA evaluation on November 21, 2013, the Veteran complained of chronic low back pain that was constant and radiated down both lower extremities, greater on the left, with tingling and dull constant aching. On examination, he had negative straight leg lifts and was able to walk on toes and heels without difficulty. He had equal strength in the bilateral upper and lower extremities. Deep tendon reflexes were 3+ throughout. In January 2014, the Veteran's strength was normal for his age in his upper and lower extremities. Straight leg lifts were negative. In October 2014, the Veteran denied weakness, and cranial nerves II - XII were intact. On VA evaluations on November 25, 2014 the Veteran complained of midline and bilateral low back pain radiating into his hips and into the entire length of both legs, with intermittent associated numbness, tingling, and weakness in both lower extremities. The pain had been there for years, increasing in frequency to the point of presentation. He graded the severity of his pain as 5/10 and reported that it may fluctuate from as low as 3 to as high as 10 on a scale of 0 to 10. It was a dull, achy, throbbing pain with intermittent sharp, burning components. Examination revealed lumbosacral spine flexion and extension limited to 45 and 5 degrees, respectively, with a moderate amount of pain of equal intensity being demonstrated in both motions. Muscle strength of the lower extremities was graded as 4/5 and equal bilaterally. Deep tendon reflexes of the lower extremities at the patella and Achilles were +1 and equal bilaterally. Skin sensation to light touch was equal, present, and normal bilaterally in the lower extremities. There was a significant amount of tenderness and spasm on palpation of the lower lumbar paraspinous musculature over the area of the lumbar facets. The rest of the examination was unremarkable. The impression was low back pain syndrome with bilateral lumbar radiculopathy. 

On January 13, 2013, the Veteran complained of midline and bilateral low back pain radiating into his hips and into the entire length of both legs. His neurological system was negative in pertinent part. On February 26, 2015, the Veteran complained of back pain radiating into his hips and legs. No abnormal neurological findings were reported. He was given an epidural injection. On VA evaluation in April 2015, his cranial nerves II - XII were intact. 

In December 2013, the Veteran testified before the undersigned that his lower back pain does radiate down into his hips and legs at times, and even into his feet, mainly in his left leg. Sometimes he would have numbness and tingling in it when he was walking, and it would be hard to walk. The increased pain would result in weakness in his leg. He indicated that he could probably stand in a line for about 10 or 15 minutes before he would start getting weakness in his legs or numbness and excessive pain in his lower back. 

On private evaluation in May 2015, the Veteran complained of back pain into his left leg. A straight leg raising was positive on the left. Lumbar radiculopathy was diagnosed. In June 2015, he denied numbness and examination revealed grossly intact sensation and 2+ deep tendon reflexes throughout. 

On VA thoracolumbar spine examination on April 11, 2016, intervertebral disc syndrome and degenerative arthritis of the Veteran's lumbar spine were diagnosed. The Veteran reported that flare ups of his back caused severe pain that is sometimes incapacitating. They would cause difficulty in normal movement and he would be unable to stand or walk for any length of time and his legs would get weak and give out. Examination revealed his thoracolumbar spine forward flexion to be to 30 degrees. Extension backward was to 15 degrees. Left lateral flexion was to 25 degrees, while right lateral flexion and rotation and left lateral rotation were to 20 degrees. His muscle strength was 3/5 for right and left hip flexion. Right and left knee extension and right and left ankle plantar flexion were 5/5, as was great toe extension bilaterally. There was no evidence of muscle atrophy. Reflexes were 1+ at the knees and ankles. Sensation to light touch was normal throughout the lower extremities bilaterally as tested. Radiculopathy was present with moderate right and left lower extremity constant and intermittent pain, and no right or left lower extremity paresthesias and/or dysesthesias or numbness. The Veteran had no other signs of radiculopathy. The nerve roots involved were L2/L3/L4 bilaterally. The severity of the radiculopathy was moderate bilaterally. There was no ankylosis of the spine, and the Veteran had no other neurologic abnormalities or findings related to his thoracolumbar spine disability. He had thoracolumbar spine intervertebral disc syndrome, but it did not require bedrest by a physician and treatment by a physician in the past 12 months. On scars examination, the Veteran's surgical fusion scar was not painful or unstable. 

On VA cervical spine examination in April 2016, the Veteran reported flare ups with sharp pain and difficulty when turning his head, and stiffness and soreness. Examination revealed his cervical spine forward flexion and extension backwards to be to 40 degrees. Right and left lateral flexion were to 20 degrees, right lateral rotation was to 70 degrees, and left lateral rotation were to 60 degrees. Pain caused functional loss but there was no evidence of pain on weightbearing. The Veteran was able to perform repetitive use testing with no additional loss of function or range of motion after 3 repetitions. The Veteran did not have localized tenderness, guarding, or muscle spasm of his cervical spine. His muscle strength testing was 5/5 in his upper extremities. Reflexes were 1+, and sensory examination was normal in the upper extremities. There was no evidence of upper extremity radiculopathy. The Veteran had no other neurological abnormalities related to his cervical spine. 

Based on the evidence, the Board concludes that a disability rating in excess of 10 percent is not warranted for the Veteran's service-connected cervical spine degenerative changes for any part of the rating period. The evidence from both VA examinations shows that the Veteran's cervical spine flexion is greater than 30 degrees and that the combined range of motion of his cervical spine is greater than 170 degrees. Additionally, he has no muscle spasm or guarding, so he does not have any that is severe enough to cause an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. No neurological symptoms are shown. 

The Board has considered whether a higher rating is warranted under the provisions of 38 C.F.R. §§ 4.40 and 4.45 but finds that it is not. The 2013 VA examination specifically noted no objective evidence of painful motion and no additional loss of range of motion following repetitive use testing. Further, he was specifically noted not to have localized tenderness, pain to palpation for joints/soft tissue, guarding or muscle spasm, or atrophy. Similar findings were noted at the time of the 2016 VA examination.

Based on the evidence, the Board also concludes that prior to April 11, 2016, no more than a 20 percent rating is warranted for the Veteran's service-connected lumbar spine degenerative arthritis under 38 C.F.R. § 4.71a. Prior to that date, the Veteran did not have forward flexion of his thoracolumbar spine limited to 30 degrees or less, and he had no ankylosis of his thoracolumbar spine, so he did not have favorable ankylosis of his thoracolumbar spine to warrant a 40 percent rating. Additionally, his intervertebral disc syndrome did not have incapacitating episodes and so it did not have incapacitating episodes of intervertebral disc syndrome having a total duration of at least 4 weeks during the past 12 months. 

From April 11, 2016, no more than a 40 percent rating is warranted for the Veteran's service-connected low back disability under 38 C.F.R. § 4.71a. The evidence shows that the Veteran does not have ankylosis of his thoracolumbar spine, and so he does not have unfavorable ankylosis of his entire thoracolumbar spine. Additionally, his intervertebral disc syndrome does not have incapacitating episodes and so it does not have incapacitating episodes of intervertebral disc syndrome having a total duration of at least 6 weeks during the past 12 months. 

The provisions of 38 C.F.R. §§ 4.40 and 4.45 have been considered regarding the lumbar spine orthopedic disability prior to April 11, 2016, when he was awarded the maximum rating for range of motion of the lumbar spine. However, findings such as the lack of muscle atrophy and the lack of indication of less functional impairment on use clinically are not supportive of higher ratings. The 2013 VA examination report specifically noted no pain with motion of forward flexion until 60 degrees, and no additional loss of motion was documented after repetitive use testing. The Veteran's hearing testimony has been considered, but it does not provide sufficient quantifiable data to permit higher ratings. 

Additionally, the Board finds the Veteran's lumbar spine fusion scar to be noncompensable, in light of the requirements of 38 C.F.R. § 4.118 for a compensable rating for a scar, and the findings contained in the examination reports. There is no evidence that the Veteran's 12 cm by 0.2cm lumbar spine surgical scar is painful or unstable. All the evidence is to the contrary. 

Based on the medical records, the Board concludes that a 10 percent disability rating for mild incomplete paralysis is warranted for the Veteran's left lower extremity radiculopathy from the date of claim, December 13, 2012, to April 10, 2106. This is so because a February 2012 neurological assessment noted that the Veteran reported a history of low back surgery in 1996 with "persistent tingling left leg below the knee since." The evidence does not suggest that the increase occurred within the year prior to the December 13, 2012, claim. Instead, the evidence of record shows that the increase occurred in 1996, after the back surgery. The preponderance of the evidence is against a finding of more severe, i.e., moderate incomplete paralysis, disability during this period. 

Based on the evidence, the Board also concludes that a compensable disability rating is not warranted for the Veteran's right lower extremity radiculopathy prior to November 21, 2013. The evidence from the date of claim in December 2012 until then does not show at least mild incomplete paralysis of the right anterior crural nerve. VA treatment records and the Veteran's statements reflect no such complaints or symptoms. At the time of the VA examination in February 2013, the Veteran's sensory examination was all normal, and no radiculopathy was present; and no radiculopathy is probatively shown for any part of the rating period prior to November 21, 2013. Testimony has been considered, but it does not indicate that there was compensable radiculopathy during the rating period, prior to November 21, 2013. 

The Board next concludes that from November 21, 2013 to April 10, 2016, a 10 percent rating, but not more, is warranted for incomplete paralysis of the Veteran's right anterior crural nerve. The Veteran had complaints of pain radiating into his hips and legs in January 2013, but there were no positive neurological findings reported then or in February 2015 or in April 2015. Instead, cranial nerves were intact in April 2015. Additionally, he denied numbness in June 2015, and examination at that time revealed grossly intact sensation and 2+ deep tendon reflexes throughout. 

The Board next concludes that from April 11, 2016, 20 percent ratings, but not higher, are warranted for the Veteran's right and left lower extremity radiculopathy. The preponderance of the evidence indicates that he had moderate, but no more than moderate, anterior crural nerve radiculopathy shown at the time of the examination on that date. The examiner categorized it as moderate, and the findings at the time were supportive. Muscle strength was 3/5 for right and left hip flexion. Weakness is a hallmark of paralysis, and 3/5 muscle strength in this case demonstrates to the Board that the Veteran probably has moderate incomplete paralysis of each anterior crural nerve. However, right and left knee extension were each 5/5. There was no muscle atrophy, deep tendon reflexes were 1+ throughout, and sensation was normal throughout the lower extremities bilaterally, indicating that severe incomplete paralysis of the crural nerves is not present. See 38 C.F.R. § 4.123, as one indication of this.

The Board notes that the Veteran's representative mentioned in April 2017 that as early as July 1995, there was evidence of increased disability, including radiculopathy. However, the law requires that, given the procedural history of the case, the analytical focus is whether any increase in disability occurred, at the earliest, beginning within the year prior to the December 2012 claim for increase. The Board does not have jurisdiction over ratings assigned prior to that time, given the procedural history in this case and finality of prior unappealed rating decisions.

The Board finds that there are no other neurological abnormalities to be compensated, either prior to or from April 11, 2016, as none are shown. 

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, No. 15-2818, 2017 U.S. App. Vet. Claims LEXIS 319, *8-9 (Vet. App. March 17, 2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

The preponderance of the evidence is against greater benefits than indicated herein and there is no doubt to be resolved. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1991).

The Board would like to thank the Veteran for his 7 years of service. 


ORDER

A rating in excess of 10 percent for cervical spine degenerative changes is denied.

A rating in excess of 20 percent for lumbar spine degenerative arthritis status post fusion surgery with scar prior to April 11, 2016 or in excess of 40 percent from that date is denied.

A 10 percent rating, but not higher, is granted for left lower extremity radiculopathy from December 13, 2012 to April 10, 2016, subject to the controlling regulations applicable to the payment of monetary benefits.

A compensable rating for right lower extremity radiculopathy prior to November 21, 2013 is denied.

A 10 percent rating, but not higher, is granted for right lower extremity radiculopathy from November 21, 2013 to April 10, 2016, subject to the controlling regulations applicable to the payment of monetary benefits. 

Two 20 percent ratings, but not higher, are granted for right and left lower extremity radiculopathy from April 11, 2016, subject to the controlling regulations applicable to the payment of monetary benefits.


REMAND

A TDIU may be assigned, where the schedular rating is less than total, when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service connected disability. When there is more than one service-connected disability, one must be ratable as at least 40 percent disabling and the combined rating must be 70 percent or higher in order for schedular TDIU consideration. 38 C.F.R. § 4.16(a). 38 C.F.R. §§ 3.340, 3.341, 4.16. As a consequence of grants made in the decision above, the Veteran, for the first time, meets the schedular criteria for consideration of a TDIU. Accordingly, the matter of schedular entitlement to a TDIU should be considered in the first instance by the RO, to provide the Veteran with due process of law. Beforehand, any additional relevant medical records should be obtained. VA medical records are constructively of record and must be obtained. See 38 C.F.R. § 3.159; Bell v. Derwinski, 2 Vet.App. 611 (1992).

The Board notes that in a June 2015 VA Form 21-8940, the Veteran indicated that he has 2 years of college experience and that he had training at a truck driving school. He reported work experience as a truck driver from 2004 to 2007, and that he last worked full time in January 2007. He stated that due to too many injuries, he could no longer drive a truck. In an addendum to the form, he indicated that lumbar spine degenerative arthritis, cervical spine degenerative changes, chronic sinusitis, and hemorrhoids prevented him from securing or following any substantially gainful occupation. All of these are service-connected disabilities. 

Accordingly, the issue is REMANDED for the following action:

1. Make arrangements to obtain any additional medical records which are relevant to the claim. 

2. Thereafter, take any additional action which is necessary and then readjudicate the Veteran's pending claim for a TDIU. If the benefits sought on appeal remain denied, the Veteran and his representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M. C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs