﻿Citation Nr: AXXXXXXXX
Decision Date: 09/29/20 Archive Date: 09/29/20

DOCKET NO. 191217-50006
DATE: September 29, 2020

ORDER

Entitlement to an initial evaluation in excess of 30 percent disabling for service-connected posttraumatic stress disorder (PTSD) prior to August 13, 2019, is granted.

FINDING OF FACT

Throughout the appeal period, the Veteran’s service-connected PTSD has been manifested by occupational and social impairment with deficiencies in most areas.

CONCLUSION OF LAW

The criteria for establishing entitlement to an initial evaluation of 70 percent disabling, but no higher, for the Veteran’s service-connected posttraumatic stress disorder (PTSD) prior to August 13, 2019 has been shown. 38 U.S.C. §§ 1155, 5107 (2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This decision has been written consistent with the new AMA framework.

The Veteran had honorable active duty service with the United States Air Force from May 2008 to September 2008 and from September 2008 to March 2009.

As a preliminary matter, the Board observes that the Veteran was granted service connection for PTSD pursuant to an August 2018 rating decision. An evaluation of 30 percent disabling was assigned, effective February 16, 2018. Thereafter, the Veteran filed a claim for an increased rating on August 13, 2019. In a subsequent rating decision, dated September 11, 2019, an evaluation of 70 percent disabling was assigned, effective August 13, 2019. 

In his VA Form 10182 Notice of Disagreement, dated December 2019, the Veteran disputed the assigned effective date for the assigned evaluation of 70 percent disabling only. Specifically, he contends that the noted evaluation is warranted throughout the appeal period. The Veteran requested direct review of the evidence considered by the Board of Veterans Appeals.

While the Board recognizes that the Veteran re-characterized the issue as one of entitlement to an earlier effective date for the assignment of a 70 percent evaluation, the Board is already considering whether a higher rating is warranted at any time prior to August 13, 2019 – thus addressing the date of entitlement to a higher rating. As the Veteran’s dispute is adequately addressed by the issue as stated above, the Board will adjudicate the Veteran’s claim as limited to the period prior to August 13, 2019.

Duty to Assist and to Notify

VA is required to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2018). Copies of compliant VCAA notices were located in the claim’s file.

VA’s duty to assist includes providing a thorough and contemporaneous medical examination, especially where it is necessary to determine the current level of a disability. Peters v. Brown, 6 Vet. App. 540, 542 (1994).

In this case, neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board... to search the record and address procedural arguments when the veteran fails to raise them before the Board.”); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

Thus, upon careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993).

Increased Ratings, Generally

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2018). The Board determines the extent to which a veteran’s service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, and the assigned rating is based, as far as practicable, upon the average impairment of earning capacity in civil occupations. 38 U.S.C. § 1155 (2014); 38 C.F.R. §§ 4.1, 4.10 (2018). Where entitlement to compensation has already been established and an increase in the assigned evaluation is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Although the recorded history of a particular disability should be reviewed in order to make an accurate assessment under the applicable criteria, the regulations do not give past medical reports precedence over current findings. Id.

The Court has held that staged ratings are appropriate for initial rating and increased rating claims when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

When all the evidence is assembled, the Board is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Entitlement to an evaluation in excess of 30 percent disabling for service-connected posttraumatic stress disorder (PTSD) prior to August 13, 2019.

The Veteran contends that his service-connected PTSD warrants a higher evaluation. For the reasons stated more fully below, the Board finds that the evidence supports a higher evaluation of 70 percent disabling throughout the appeal period.

Review of the record indicates that the Veteran’s service-connected psychiatric condition is currently evaluated under 38 C.F.R. § 4.130, Diagnostic Code 9411 (2018).

The General Rating Formula for Mental Disorders, including Diagnostic Codes 9411 and 9413, provide the following ratings for psychiatric disabilities:

A 30 percent evaluation is provided for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). Id.

A 50 percent rating is warranted if it is productive of occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating contemplates occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. Id.

A 100 percent rating contemplates total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The use of the term “such as” in the general rating formula for mental disorders in 38 C.F.R. § 4.130 demonstrates that the symptoms listed after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). VA is not required to find the presence of all, most, or even some of the enumerated symptoms recited for particular ratings. Id. The use of the phrase “such symptoms as,” followed by a list of examples, provides guidance as to the severity of the symptoms contemplated for each rating and permits consideration of other symptoms particular to each veteran and disorder and the effect of those symptoms on the Veteran’s social and work situation. Id. Indeed, § 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013).

Review of the record shows ongoing treatment for the Veteran’s psychiatric symptoms. 

In May 2018, a private physician’s opinion was associated with the claims file. Therein, the physician referenced a history of treating the Veteran for symptoms of pervasive and significant anxiety and insomnia. An onset of symptoms dated back to separation from active service. Post-service, progressive worsening was indicated. The Veteran endorsed additional symptoms including frequent worry/concern with mortality, and finances, his wife’s ailing health, hypervigilance, social avoidance/avoiding crowds, flashbacks/reexperiencing, and irritability. He denied thoughts of self-harm or harming others. Prescribed psychiatric medications, including Viibryd, were unable to provide meaningful improvement of his symptoms. Current diagnoses included a generalized anxiety disorder and PTSD.

An initial VA examination was conducted in May 2018. On examination, current diagnosis included PTSD. The Veteran reported frequent nightmares, reexperiencing/frequent thoughts of Iraq. Social avoidance and avoidance of crowds was indicated. The Veteran’s symptoms were deemed associated with social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by medication.

During the clinical interview, the Veteran acknowledged having a few friends during active duty. As to familial connections, he endorsed a good relationship with his wife and children. The Veteran denied having any hobbies and stated that he communicates with his extended family (including his mother and sister) only on a monthly basis. Post-service employment includes work as a fire fighter. No on-the-job conflicts were reported. According to the Veteran, he began seeking psychiatric treatment in December 2016. Prior diagnoses include PTSD and a generalized anxiety disorder. Prescribed medications include Vilazodone, Trazodone, and Vistaril. The Veteran acknowledged use of alcohol. He also admitted a previous charge of reckless driving. 

The examiner identified current symptoms including anxiety, suspiciousness, chronic sleep impairment, and mild memory loss. Behavioral observations show that the Veteran was alert and oriented, with an anxious affect. He denied any experience with psychosis, hallucinations, or delusions. No homicidal or suicidal ideations were reported. The Veteran endorsed a history of depressive feelings, loss of interest, impaired sleep (4 hours per night), problems with concentration and lack of energy. He acknowledged on the job stress as a firefighter and concern regarding his wife’s ailing health (she suffers from an autoimmune disorder).

In May 2019, a psychiatric treatment record shows that the Veteran was prescribed Duloxetine, Alprazolam and Melatonin. No change in diagnosis was indicated.

In August 2019, the Veteran filed a VA 21-526EZ, Fully Developed Claim (Compensation) asserting worsening symptoms related to his service-connected PTSD. The same month, he associated a VA Form 20-0995 Supplemental Claim Decision Review Request with the claims file. Again, he reported worsening symptoms.

In September 2019, the Veteran was afforded a new VA examination. The previous diagnosis of PTSD was confirmed. The Veteran’s current symptoms were associated with occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. 

During the clinical evaluation, the examiner acknowledged review of a lay statement from the Veteran’s supervisor which suggested a history of poor work performance and attendance. Recent psychiatry records not the Veteran’s struggles with PTSD, anxiety and depressive symptoms. A VA treatment record, dated August 2019, notes that antidepressants were prescribed to treat his symptoms, however, little improvement was achieved.

According to his spouse, the Veteran frequently missed work due to an inability to get out of bed. He appeared disinterested and provided minimal assistance with the couple’s children. Following therapy sessions, the Veteran was a “a mess.” He endured frequent nightmares that impaired sleep and was often unable to soothe himself. Typically, the Veteran slept approximately 4 hours per night. His wife described him as chronically anxious, very irritable with the children, and hypervigilant in crowds, and suspicious while having dinner at restaurants (he watches the door). He acknowledged a distant relationship with his mother and sister, and few friends. No suicidal or homicidal ideations were reported. Prescribed medications include Alprazolam, Duloxetine and Melatonin. A recent history of violent outbursts included a pending battery charge related to an altercation with a parking enforcement official following an attempt to boot his wife’s car. Use of alcohol occurred once or twice per week. 

On examination, the examiner identified current symptoms including a depressed mood, anxiety, chronic sleep impairment, mild memory loss, circumstantial, circumlocutory or stereotyped speech, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work or worklike setting. The Veteran was observed as casually dressed, adequately groomed. His speech was mildly pressured with “fidgety” psychomotor activity. The Veteran’s mood was described as mostly anxious and mildly depressed. His affect was congruent with anxiety. The Veteran denied any experience with suicidal or homicidal ideations. His stream of thought was described as mildly circumstantial. There was no evidence of psychosis. The examiner concluded that the evidence shows that the Veteran suffered from significant occupational and social impairment.

On review of the evidence, the Board finds that an evaluation an evaluation of 70 percent disabling is warranted throughout the appeal period.

In reaching the referenced finding, the Board has fully considered all medical evidence and the lay assertions of record. It also acknowledges the Veteran’s competence to report on observable symptoms and notes that such statements are generally deemed credible to the extent that they articulate the Veteran’s belief that he is entitled to a higher rating.

To establish entitlement to an evaluation of 70 percent disabling, the medical evidence must show that the Veteran’s psychiatric condition was productive of occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships.

In this case, the medical evidence includes a documented history of the Veteran’s struggles with a depressed mood, irritability, problems with concentration, poor sleep, anger/aggression, social avoidance, and nightmares, an impaired ability to function or adapt appropriately and effectively to social and work-like settings; or maintain effective relationships, to include within stressful circumstances.

More specifically, treatment records document reports of the above referenced symptoms which pre-dated the initial evaluation for PTSD and continued thereafter.

Therefore, resolving all doubt in the Veteran’s favor, the Board finds that the evidence supports the assignment of an evaluation of 70 percent disabling throughout the appeal period. To that extent, the Veteran’s claim is granted.

 

 

B. MULLINS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board N. Whitaker, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.